71 So.2d 741 (1954)
NATIONAL AIRLINES, Inc.
v.
FLORIDA EQUIPMENT CO. OF MIAMI.
Supreme Court of Florida. Special Division B.
March 12, 1954.
Rehearing Denied April 29, 1954.
*742 Loftin, Anderson, Scott, McCarthy & Preston and Francis W. Sams, Miami, for appellant.
*743 George J. Baya, Miami, for appellee.
TAYLOR, Associate Justice.
National Airlines, Incorporated, sued Florida Equipment Company of Miami, a corporation, for alleged breach of a contract to sell, deliver, and install in the yacht Morea, two Buda diesel marine engines. The defendant counterclaimed for work done and materials furnished to National Airlines.
The Circuit Court entered a summary judgment for defendant on the complaint and counterclaim.
The basis of the complaint was a written order from National Airlines to the defendant for two new Buda diesel marine engines, which order contained a clause providing for a credit on the purchase price of the new engines of $2,000 for the old engines then installed in the yacht Morea. No part of the purchase price was paid and there was no written acceptance by the defendant of this order. The complaint, however, alleges that the defendant accepted the order and undertook performance of the contract by removing the two used engines from the yacht. The Circuit Court held that the complaint stated a cause of action.
Voluminous depositions were taken, after which the defendant moved for summary judgment, which motion was granted.
It appears from the depositions and affidavits that G.T. Baker, President of National Airlines, Incorporated, is the master of the Morea and Fred W. Pike is the crew. Among the employees of Florida Equipment Company are Al Carver, shop foreman, Tom Schmidt, a salesman, C.H. Rowe, local manager, Cecil Steadham, office manager, and Bruce Pou and Roy R. Carr, mechanics.
Late in May, 1951, while on a cruise, the Morea developed engine trouble. Baker sent for Carver, who advised him that he could not remedy the trouble at that time and, at Baker's request, Carver stayed on the yacht until it reached port. During the voyage Carver and Baker discussed the relative advantages of overhauling the engines of the yacht and replacing them with new engines.
After the Morea docked in Miami, Schmidt, at the suggestion of Carver, entered into negotiations with Baker, trying to sell him new engines. These negotiations led to Baker signing and delivering to Schmidt an order for two new Buda engines, with the stipulation that a trade-in credit of $2,000 be allowed for the old engines. Schmidt had no authority to accept this order and did not attempt to do so. This order was dated June 6, 1951. Rowe, the only man in Miami with authority to accept this order, left the city on June 8 on his vacation. No notice of acceptance of the order was given Baker. On June 27 Rowe wrote Baker declining to accept the order.
In the meantime, Pou and Carr, acting on orders from Steadham, had removed the old engines from the Morea and placed them in the shops of the defendant.
It is plaintiff's theory that by the receipt of the order and subsequent removal of the old engines from the yacht that there has been an acceptance of the offer and sufficient part performance to satisfy the Statute of Frauds.
The defendant contends that the removal of the engines was not an acceptance of the offer, but that this was done pursuant to instructions from Pike, who they found in charge of the yacht in port. Defendant relies strongly upon the fact that Pike admits signing an instrument called a "work order," which it contends Pike signed before the old engines were touched. Pike says that the old engines were disconnected before he signed the work order, and that he was requested by the mechanics to sign it just before the engines were actually lifted from the hold of the yacht.
It is apparent that before plaintiff may recover, it must prove a contract  a meeting of the minds of the parties  or conduct of the defendant which establishes *744 an estoppel to deny the existence of a contract.
It is equally apparent that issues of fact are presented: Was the removal of the engines done pursuant to the order signed by Baker or the order signed by Pike? Did Pike have authority to bind National Airlines by any contract? Just what communications passed between Pike and the defendant? (There is sharp conflict between the witnesses on this point.) It is possible that other evidence may be developed on these issues. For example, the depositions show that one, F.W. Gillette, a representative of the company manufacturing Buda engines, participated to some extent in the dealings between the parties, and his deposition was not taken. Again, defendant refused to produce correspondence between it and the Buda company that might have thrown some light on the issues.
In this state of the record, we are of the opinion that the Court erred in granting the summary judgment in favor of the defendant on plaintiff's complaint.
The function of the rule authorizing summary judgments is to avoid the expense and delay of trials when all facts are admitted or when a party is unable to support by any competent evidence a contention of fact.
But the facts admitted, in order to justify a summary judgment, must be the ultimate facts as distinguished from evidentiary facts. It not infrequently happens that there is actually no conflict in evidence as to what was done or said, but the inferences of ultimate fact to be drawn from these evidentiary facts may be quite different. It is peculiarly within the province of the jury to draw these inferences and determine the ultimate facts. The constitutional guaranty of the right of trial by jury is respected only when this rule is strictly applied.
Of course, a litigant by merely asserting a fact, without any evidence to support it, cannot avoid a summary disposition of his case. Before this phase of the rule comes into play, the record must show that all evidence which may support that litigant's contentions must be before the Court. That does not appear in this case. In fact, the contrary appears. Gillette's depositions were not taken. But more important, the defendant refused to produce any records of correspondence or other communication that it may have had with the Buda Company relative to this transaction. We have no way of knowing, but it is very possible that such records may contain evidence indicating that the removal of the old engines from the yacht was pursuant to Baker's order for new engines. Certainly the plaintiff had the right to explore that possible source of proof and the defendant should have been required to produce these documents if any such exist.
The counterclaim is based, in part, upon a demand for compensation for services rendered by defendant through Carver before the negotiations for the sale of new engines began. To this extent, there is no error in the judgment for defendant on the counterclaim. But the judgment, as rendered, included items for work in removing the engines from the yacht and storing them. Allowance of these items could only be sustained by accepting defendant's views as to the facts which we have held to be error.
The judgment appealed from is reversed, and the case remanded for further proceeding.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.