DREW, Justice
(dissenting).
Annette Rivaux sued the Florida Power & Light Company to recover damages for the alleged .wrongful death of her husband. The complaint alleged that in carrying on its business the power company erected and maintained certain electric poles and wires across public and private property in various parts of Dade County and that it was. the duty of the company to exercise great care and caution in maintaining said lines in a manner that injury would not be occasioned to anyone and that it was the duty of the power company to exercise due cáution and inspection of such electric wires to insure that they were at all times maintained in a manner as not to be dangerous to the public. It is further alleged in the complaint that notwithstanding the duty of the power company, as aforesaid, it permitted certain of its wires to he maintained in a manner as to create a hazard and danger to the public and that it knew or by the exercise of reasonable care should have known that such dangerous condition existed; and that by virtue thereof, George Rivaux, the husband o‘f the plaintiff was injured and killed. The complaint alleged the defendant’s maintenance of high tension wires was such as to render it a public and private nuisance. The complaint further alleged that on or about August 10,-1952, the decedent, husband of the plaintiff, while employed to trim coconut palm trees on Key Biscayne, and while lawfully working thereat on a vacant lot “where decedent could not possibly know or expect that the electrical lines passing through or close to the trees thereon were ‘live’ or charged with electricity, when through the negligence, carelessness, negligent acts or negligent omissions of the defendant, * * * in maintaining and operating their electric power lines and high voltage wires without warnings and in close proximity to growing coconut palm trees and other trees and in other and divers ways and acts of negligence on the part of the defendant, plaintiff’s pruning or cutting tool came in contact with a green branch or frond, with said electrical wires and with the electricity from said wires which ‘arced’ or ‘jumped’ to said pruning tool, whereby he was injured without any fault or negligence on his part and received 'from defendant’s high tension electric wires a shock of electricity which electrocuted him and caused his death.”
The complaint further specified the negligent acts of the power company to be:
“(a) In carelessly and negligently and without due regard for the public or for persons lawfully employed in work taking them close to said wires maintaining the said electric wires and high tension wires without insulation.
“(b) In failing to properly inspect and see that the said wires did not touch the limbs of said trees and in permitting the wires to touch or run close to the limbs of the trees.'
"(c) In failing to warn persons, and in particular plaintiff’s intestate, of the fact that said wires were ‘live’ and were carrying electric current of high voltage and were dangerous.
“(d) In failing to give,warning to persons that ordinarily come in contact with the trees near which or through which the wires ran, although defendant knew that the trees must be trimmed, cut and treated.
“(e) In that it failed to take reasonable precautions in the premises or to use due care in that it failed to install, provide or maintain circuit breakers or proper or adequate circuit breakers or fuses or other safety deyices to break the electrical circuit when such lines came in contact with decedent’s pruning tool.
“(f) In failing to inspect or to make reasonable inspections of its lines and equipment so that the dangerous proximity of said high voltage wires to the trees upon which decedent was working would have been discovered.
*716 “(g) In that it negligently failed to have the said wires of such high and potentially dangerous voltage of electricity installed underground or installed in proper conduits.
“(h) In negligently failing to warn the public, and in particular,' decedent, of the extremely high voltage being carried by its wires when said voltage was so high that it would ‘arc’ or ‘jump’ to the equipment used in trimming trees or cutting coconuts.
“(i) In negligently failing to properly inspect, maintain and trim the fronds of coconut palm trees upon its right-of-way so that persons working in said trees were endangered from the contact with aforesaid wires.
“(j) In maintaining said high tension electric wires in such a manner without proper precautions in residential areas as to constitute a public and private nuisance.
“(k) In failing to indicate that wires passing through an area of vacant lots were ‘live’ and in operation.”
Issues were made up by the answer of the power company generally denying the assertions of the complaint as to negligence, pleading not guilty, and charging that if the decedent was injured and killed in the manner-alleged, he was barred from recovery by virtue of his contributory negligence; that the decedent’s death was caused by his negligence and carelessness or by the negligence and carelessness of others than the defendant and further that the decedent assumed all risk of danger, injury or death.
The defendant filed a motion for summary judgment alleging that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. Attached thereto were thirteen affidavits of various individuals consisting of some thirty-five pages, together with the following exhibits: (1) a Vicinity Sketch showing the locale of the accident, (2) ten photographs of the wires, cutting tools, trees and other objects alleged to be germane, (3) a certified copy of the plat of Biscayne Key Estates, (4) a certified copy of the plat of Tropical Isle Home Subdivision, (5) a certified copy of a deed from Enid Corp., and (6) the pleadings in the cause. In ■ opposition to the motion, plaintiff filed three affidavits (two by the same person). The contents of the various affidavits and exhibits will be discussed hereafter. Upon consideration of these voluminous affidavits and exhibits, the lower court concluded that there were “no factual issues warranting a jury’s scrutiny, and that there is no genuine issue as to any material fact; that an absence of legal liability is displayed, and that the defendant is entitled to judgment as a matter of law.” (Emphasis supplied.) (To this emphasized language we will refer later.) The motion for summary judgment was granted and formal summary judgment was entered for defendant. This appeal is from this final judgment.
The rule providing for the entry of summary judgments makes no distinction between actions ex delicto and ex contractu. I think, however, in the practical application of the rule there is, in fact, a great difference that the court must bear in mind. In an action based upon a contract, the admitted contract or writing itself so often speaks so conclusively on the material facts as-to, leave no doubt that there are no genuine issues of any material fact to be determined. Most of the cases cited by the appellee in resisting this appeal are cases arising out of actions upon contracts. One case arising out of tort cited by it is Richmond v. Florida Power & Light Co., Fla., 58 So.2d 687, 688. In that case the uninsulated wires “were in plain sight” and the plaintiff was injured when a metal wire attached to a kite he was flying came in contact with them. The facts in that case were such as to afford a reasonable basis for the granting of a summary final judgment, and we so held.
The fact that so many voluminous affidavits and exhibits were required to establish that there was no genuine issue of a material fact is sufficient within itself at least to raise some, doubt in my mind of the correctness of the judgment of the lower court. The defendant “protesteth too much.” We have, therefore, examined these affidavits and these exhibits and the counter-affidavits most carefully in order to determine wheth *717 er the trial judge below committed harmful error in taking this case from the jury and deciding it himself.
Without going into great detail, the defendant’s affidavits purported to show that the. defendant was not. guilty of negligence or maintaining a nuisance. Such affidavits and exhibits tended also to show that the plaintiff’s husband’s death was caused either by his own negligence or of that of some unnamed third party. Some of the affidavits are of experts purporting to show that the wires were maintained at a height and under circumstances consistent and in accordance with the underwriters’ requirements. Other affidavits do make a strong showing that the electric wires with which plaintiff’s decedent came in contact were plainly visible and that none of them were close enough to the coconut trees on which decedent was working to have caused the current to jump to the trees and thence to the decedent’s cutting pole. The exhibits attempt to show a nick in the cutting instrument and in the wire itself in order to prove that the cutting instrument came in direct contact with the wire. There were other affidavits which tended to show and surveys which tended to establish the location of the trees with reference to the wires and the density of the foliage. In fine, the affidavits and exhibits consisted of what would ordinarily constitute the principal evidence before a jury in defense of a case of this nature. The facts were primarily evidentiary.
On the other hand, the plaintiff’s affidavits, one of which was by plaintiff’s attorney, alleged certain facts which tended to discredit on the ground of interest some of the individuals who signed affidavits for the defendant. If the facts alleged by the plaintiff were proven during the trial, a jury would have been justified in disregarding the testimony of these witnesses. Moreover, the affidavits of expert witnesses at this phase of the case were of little or no value. The value to be given the testimony of expert witnesses has always been primarily for the court or jury to determine. Moreover, to accept at face value the evidence of experts in negligence cases without the benefit of cross-examination and to render a summary judgment based altogether or even partially thereon could well result in substantial injury to the litigant on the other side and is not conformable to traditional American concepts of the administration of justice. Where there are disputed material facts in negligence actions the Constitution requires them to be resolved by a jury selected from the body of the county in the absence of a valid waiver of that right by all affected parties. There were affidavits of the plaintiff which tended to establish that the electric wires which caused the death were not clearly visible and that on other and prior occasions, because of their close proximity to the coconut trees, they had set fire to the fronds when they brushed against them. Surely, this fact was material to the question of negligence.
The jury system is a sacred part of the American concept of the administration of justice. The right to a jury trial is guaranteed by the Constitution and that right should not be taken from a litigant lightly and never taken from him when there is a genuine issue of a material fact present in a law suit. This Court, and other courts of the land, have upheld the entry of summary judgments in those case's where there is no genuine issue of any material fact and one or the other of the parties is entitled to a judgment as a matter of' law. Where that situation appears clearly from the record, it is not a denial of any constitutional right to take the case from the jury because under such facts the Constitution does not guarantee a jury trial.
The rules providing for summary judgments and summary final decrees have served a most salutary purpose in the administration of justice. Such rules will continue to do so so long as the courts exercise restraint in applying them. Summary judgments should never be granted on the mere weight of the evidence or the number of affidavits on one side as against the number on the other nor should they ever be granted merely because of the view of the trial judge that “the record shows an absence of legal liability.” I am convinced from the record in this case that it was the quoted consideration above which prompted the *718 eminent Circuit Judge below to grant the motion for summary judgment. In doing so, he usurped the province- of the jury. He tried the case by affidavits. It may well be that when all of the evidence is in or the plaintiff has had an opportunity to present her cáse that a directed verdict will be justified but there are time's for directed verdicts and other times for the entry of summary judgments.
There is no doubt in my mind that the affidavits of both parties created genuine issues of material facts and that, under such circumstances, issues were created on which only a jury .could pass judgment.
In the recent case of National Airlines, Inc., v. Florida Equipment Co. of Miami, Fla.1954, 71 So.2d 741, 744, we had occasion to review the function of the rule authorizing summary judgments and to discuss the circumstances under which summary judgments should be granted. In that case this Court, speaking through- Mr. Associate Justice Taylor, said: '
“The function of the rule authorizing summary judgments is to avoid the expense and delay of trials when all facts are admitted or when a party is unable to support by any competent evidence a contention of fact.
' “But the facts admitted, in order to'' justify a summary judgment, must be the ultimate facts as distinguished from evidentiary facts. It not infrequently happens that there is actually no conflict in evidence as to what was done or said, but the inferences of ultimate fact to be drawn from these evidentiary facts may be quite different. It is peculiarly within the province of the jury to draw these inferences and determine the ultimate facts. The constitutional guaranty of the right of trial by jury is respected only when this rule is strictly applied.
“Of course, a litigant by merely asserting a fact, without any evidence to support it, cannot avoid a summary disposition of his case. Before this phase of the rule comes into play, the- record must show that all evidence which may support that litigant’s contentions must be before the Court.”
It is my view that the granting of the motion for summary judgment in this case, was clearly erroneous and resulted in substantial legal injury to the plaintiff. I think the judgment should be reversed with directions to set it aside and that the cause should be ordered to trial upon the merits.
SEBRING and ROBERTS, JJ., concur.