141 So.2d 318 (1962)
Leo WEINSTEIN, d/b/a Forest Pharmacy, Appellant,
v.
GENERAL ACCIDENT FIRE AND LIFE ASSURANCE COMPANY LIMITED, Appellee.
No. C-356.
District Court of Appeal of Florida, First District.
May 17, 1962.
*319 Norton, Wood & Moore, Jacksonville, for appellant.
Mathews, Osborne & Ehrlich, Jacksonville, for appellee.
RAWLS, Judge.
This case involves a contract of burglary insurance. The trial court entered summary final judgment in favor of appellee-defendant, General Accident Fire and Life Assurance Company and, appellant-plaintiff Leo Weinstein appealed.
General Accident issued to Weinstein a mercantile open stock burglary policy of insurance for the period beginning January 22, 1957, to January 22, 1960, with limits of liability of $2,000.00. Material parts of the policy involved herein are:
Insuring Agreements:
1. Loss of merchandise; premises damage. To pay for loss by burglary or by robbery of a watchman, while the premises are not open for business, of merchandise, furniture, fixtures and equipment within the premises or within a showcase or show window used by the insured and located outside the premises but inside the building line of the building containing the premises or attached to said building.
Conditions:
4. Books and Records. The insured shall keep records of all the insured property in such manner that the company can accurately determine therefrom the amount of loss.
The basic issue is: Does the record conclusively show that the plaintiff violated the terms of the policy by failing to keep sufficient records from which the loss could be determined, and thereby entitle defendant to a summary final judgment?
Weinstein alleged that he sustained a burglary on or about May 17, 1957, and by reason of said policy, General Accident was liable to him in the sum of $1,376.24. Weinstein filed suit and prior to trial, General Accident took his deposition. At commencement of trial the court sustained General Accident's objections to Weinstein's oral testimony in attempting to prove losses, and Weinstein took a non-suit.
On November 18, 1958, Weinstein filed the instant suit on the same subject matter. *320 General Accident's primary defense is that Weinstein has failed to keep records in such a manner that the amount of loss is ascertainable from the records without the aid of parol testimony. On November 22, 1960, General Accident filed its motion for summary judgment on the grounds that: (1) No genuine issue as to any material fact existed. (2) It affirmatively appears Weinstein breached the terms of the policy. (3) Plaintiff has no testimony or other evidence to prove the alleged loss. (4) It affirmatively appears that Weinstein's books and records are not sufficient to establish the amount of the alleged loss, unaided by parol testimony.
Weinstein filed his affidavit in opposition to the motion for summary judgment, stating therein that by reason of the burglary he sustained damage to the door of his store; theft of five display cases and their contents; theft of narcotic items; and theft of other merchandise; that he maintained complete books and records of narcotic items; that he kept and maintained ledger accounts, invoices and checkbook records as to other articles stolen.
Weinstein's statements in his deposition reflected that he had not taken an inventory for a period of two years prior to the alleged burglary; that his records consisted of invoices, checkbooks, a ledger reflecting purchases, sales and other daily expenses, and that his memory or the memory of his son would have to be relied upon to some extent to establish the merchandise lost.
The trial court entered summary judgment finding that Weinstein's deposition prevented recovery by him. We find that the trial court misinterpreted the principles of law applicable to this cause.
In order to ascertain the propriety of the summary judgment it is first necessary to construe the legal effect of the books and records clause contained in the insurance policy. Provisions of this type are often referred to as "iron safe clauses" or sometimes as "book warranty clauses." The content of clauses construed under such general labels are found to vary from a few simple lines as contained in the policy before us, to lengthy paragraphs detailing the taking of inventories and method of keeping books and records. Each party has cited a wealth of cases from other jurisdictions construing covenants of varying contents as authority for their respective positions; however, we are satisfied that the proper rule has been established in this jurisdiction.
Palatine Insurance Co. v. Whitfield[1] involved the construction of a fire insurance policy which contained an "iron safe clause."[2] In considering the interpretation to be given to this clause, the court on page 872 set out the following statement of the Supreme Court of the United States in the case of Liverpool & London & Globe Insurance Co. v. Kearney[3] wherein it said:
"Turning now to the words of the policies in suit, what is the better and more reasonable interpretation of those provisions so far as they relate to the issues in this case? The covenant and agreement `to keep a set of books showing a complete record of business transacted, *321 including all purchases and sales, both for cash and credit, together with the last inventory of said business,' should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show, to a man of ordinary intelligence, `all purchases and sales, both for cash and credit.' There is no reason to suppose that the books of the plaintiff did not meet such a requirement."
General Accident Fire & Life Assur. Corp. v. Schero,[4] case originating in Florida, involved a books and records clause almost identical to the one being considered.[5] In that cause, the insured was granted summary judgment on the question of liability. One of the insurers defenses on liability was the sufficiency of the insured's books and records. In reversing the summary judgment, the Circuit Court of Appeals, Fifth Circuit, enunciated the controlling principles of law applicable to the instant cause wherein it stated:
"We cannot agree with appellant that the evidence establishes, as matter of law, that the defendants failed to keep books as required; neither can we agree with appellees that it establishes, as matter of law, that the defense was not made out, or that appellant has waived this defense. We think it clear that, in the present state of the record, it raises a substantial issue of fact, both as to whether the defense has been waived and as to whether the defendant kept books and accounts as required. It was early settled in this circuit, and the rule has never been departed from here, that provisions of the kind in question do not have to be strictly complied with, a substantial and reasonable compliance is sufficient.[6] The evidence does present conflicts which prevent us from saying, as matter of law, that the books and accounts were not kept in compliance with the invoked provision, and it certainly furnishes ample support for a finding of fact that they were." [Emphasis supplied.]
A summary proceeding is not a trial by affidavit or deposition. Such a proceeding is not designed to conduct a trial of the issues drawn. All evidence must be viewed in the light most favorable to the party against whom the motion is made, and if there is a genuine issue of material fact, then the motion should be denied.[7] As stated in Humphrys v. Jarrell.[8]
"* * * [T]he courts hold the moving party for summary judgment or decree to a strict standard and the papers supporting his position are closely scrutinized, while the papers opposing are leniently treated in determining whether the movant has satisfied the burden required of him. Moore's Federal Practice, 2nd ed., Vol. 6, p. 2336 and p. 2339. In determining the existence of a genuine issue of material fact, all inferences of fact from the proofs proffered at the hearing must be drawn by the trial court against the movant and in favor of the party opposing the motion. Moore's Federal Practice, 2nd ed. Vol. 6, p. 2125. Likewise, an appellate court should indulge all proper inferences in favor of the *322 party against whom a summary judgment or decree has been requested. See Delany v. Breeding's Homestead Drug Co., Fla. 1957, 93 So.2d 116; and Pritchard v. Peppercorn and Peppercorn, Inc., Fla. 1957, 96 So.2d 769."
The insurance company insists that Weinstein's own admissions in his deposition reveal the inadequacy of his records. We do not agree. It is not for Weinstein to determine if his records are adequate or inadequate. This is a matter for judicial determination. It could well be said that the trial court has determined the inadequacy of the records. However, the trial court has not been confronted with Weinstein's records. It has only considered Weinstein's affidavit setting out the nature of his records.
Next, the insurer contends that Weinstein's affidavit could not make an issue of fact since he is precluded from testifying orally as to his losses at the trial. By this assertion, the insurer appears to take the position that a proceeding on motion for summary judgment is in the nature of a pre-trial of the cause. This is not the purpose of such proceeding. As stated in National Airlines v. Florida Equipment Co.[9] by Associate Justice Taylor on page 744 of 71 So.2d:
"The function of the rule authorizing summary judgments is to avoid the expense and delay of trials when all facts are admitted or when a party is unable to support by any competent evidence a contention of fact.
"But the facts admitted, in order to justify a summary judgment, must be the ultimate facts as distinguished from evidentiary facts. It not infrequently happens that there is actually no conflict in evidence as to what was done or said, but the inferences of ultimate fact to be drawn from these evidentiary facts may be quite different. It is peculiarly within the province of the jury to draw these inferences and determine the ultimate facts. The constitutional guaranty of the right of trial by jury is respected only when this rule is strictly applied." [Emphasis supplied.]
Competent evidence as to a contention of fact is found in this record. For illustration, the record at this stage, for the purposes of considering the motion for summary judgment, conclusively shows that some five display cases were stolen. The terms of the policy insured such damage. The ultimate fact has arisen and the proof of loss is an evidentiary matter to be disposed of at trial on the merits.
Considering the contents of Weinstein's affidavit in opposition to the motion for summary final judgment, together with his entire deposition, we must conclude that a material issue of fact does exist and that Weinstein should be afforded the opportunity of proving his allegations.
We sympathize with the trial court's desire to expeditiously dispose of this case which has dragged interminably through the courts. The plaintiff should be required to speedily bring this matter to trial and, if he can, adduce competent evidence to sustain his complaint or in the common vernacular: "Put up or shut up." However, this opportunity must be granted under applicable rules of procedure, and a summary proceeding was not the proper method to utilize in disposing of dilatory proceedings.
Reversed with directions to proceed further in accordance with this opinion.
WIGGINTON, Acting Chief Judge, and STURGIS, J., concur.
NOTES
[1] Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869 (1917).
[2] The court identified this clause on page 871 of 74 So. when it stated: "The agreement in the policy which is known as the `iron safe clause' requires that the insured `will take a complete inventory of stock on hand at least once in each calendar year,' and `will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit,' and `will keep such books and inventory * * * securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not open for business, or failing in this, the insured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building."
[3] Liverpool & London & Globe Insurance Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460.
[4] General Accident Fire & Life Assur. Corp. v. Schero, 151 F.2d 825, 827 (5th Cir.1945).
[5] Id. page 826 in Note 4: "C  Exclusions: The corporation shall not be liable for any loss * * * (3) unless books and accounts are kept by the assured and in such manner that the exact amount of loss can be accurately determined therefrom by the corporation."
[6] Citing Palatine Insurance Co. v. Whitfield, Footnote 1.
[7] 30 Fla.Jur., Summary Judgment, § 9 and cases cited therein.
[8] Humphrys v. Jarrell, 104 So.2d 404, 410 (Fla.App. 1958).
[9] National Airlines v. Florida Equipment Co., 71 So.2d 741 (Fla. 1954).