103 So.2d 677 (1958)
W.O. OWENS and his wife, Marguerite L. Owens, Appellants,
v.
F.D.H. MacKENZIE, doing business as MacKenzie Realty, Appellee.
No. A-104.
District Court of Appeal of Florida. First District.
June 10, 1958.
*678 Greene, Ayres & Greene, Ocala, for appellants.
James M. Smith, Jr., Ocala, for appellee.
WIGGINTON, Acting Chief Judge.
This is an appeal from a final judgment entered in favor of the plaintiff-appellee against the defendant-appellant for a real estate broker's commission, pursuant to summary judgment granted on the pleadings, affidavits and depositions filed in the cause. Appellants assign as error the granting of summary judgment in favor of appellee.
The Owens, being the owners of certain real property in and around Marion County and appellants here, entered into a written agreement with a real estate promotional and sales corporation known as Previews, Inc., by which the property was listed for sale. It was agreed that Previews, Inc., would be paid a commission of ten per cent of the sale price if the property was sold through its efforts and listing. It was further agreed that, if the services of a broker were engaged to effect a sale, one-half of Preview's ten per cent commission would be paid to such broker as his fee. The plaintiff-appellee was such a broker. The agreement also contained an explanatory note to the effect that "The prime requisite for the success of this plan lies in the fact that it is a program of continuing cooperation between you [owner] and Previews  with each of us keeping the other fully informed on developments  until a sale has been consummated."
MacKenzie, the plaintiff-appellee, testified on deposition that the only listing his office had on appellants' property was through Previews, Inc. He had no direct listing or agreement with appellants regarding his services as a broker, but admitted that no commission was payable until the actual closing of the sale and the passing of title. As a result of his efforts as broker appellee located a purchaser, Wise, who entered into a contract of purchase with appellants, whereby Wise deposited $5,000 as "earnest money" and agreed to purchase the lands in question for a price, and on terms agreeable to appellants. This was a standard form contract used by realtors. It was furnished and signed by appellee as broker, and contained a provision that in the event of default by Wise "It is agreed that one-half the earnest money forfeited shall belong to the broker up to the amount of his commission."
While the Owens were in the process of quieting their title against certain defects disclosed by an examination of the abstract, they were notified by MacKenzie that Wise was not financially able to consummate the purchase. Before any steps were taken to declare a forfeiture, MacKenzie purchased an assignment of Wise's right under the purchase contract, notified the Owens, and commenced negotiations with other prospective purchasers; one of them being a Dr. Sandburg, to whom the land was subsequently sold at a price substantially above that agreed upon between the Owens and Wise, and resulting in a considerable profit to MacKenzie. MacKenzie's negotiations for a resale to Sandburg were concealed from the Owens. After obtaining the assignment of Wise's contract, MacKenzie instructed the Owens through their attorneys to prepare the necessary deed and purchase money mortgage in his name. At the same time MacKenzie stated that he expected to be paid the agreed broker's commission as a credit against the purchase price. Upon being informed that this credit would not be allowed since he had become the real purchaser, MacKenzie altered his plan and ordered the necessary deed and mortgage prepared in Wise's name. The evidence as to whether the Wise assignment to MacKenzie was rendered inoperative by mutual consent of the parties thereto, like many of the other factors herein, is conflicting. The Owens eventually conveyed the lands to Wise who before the closing had executed and placed in escrow a deed of conveyance of the same lands to Dr. Sandburg. It was *679 Sandburg's money that was used to close the transaction between Wise and the Owens. For his cooperation, Wise was reimbursed the amount of his earnest money deposit.
The critical question is whether there exists a genuine issue as to any material fact, thus requiring the case to be submitted to a jury. In considering this, the evidence as well as all reasonable inferences that may be drawn therefrom must be considered in a light most favorable to the party moved against.[1] It is noted that we are not here dealing with the general rule that absent a specific agreement to the contrary a broker employed to sell land fulfills his obligations when he secures a binding written contract of purchase within the terms of his contract of employment.[2] We think the ultimate answer turns on a determination of whether it was intended by the parties that the services of the broker were to be employed from the inception of his undertaking through all subsequent negotiations down to and including the passage of title from the Owens to a purchaser procured by the broker; or whether, as MacKenzie contends, his services to and fiduciary relationship with the Owens terminated with the execution of the contract for sale containing the price, terms and conditions which formed the quid pro quo of the subsequent sale. Where the essential inquiry is concerned with one's intent, although the evidentiary facts may not be in dispute, and such intent can better be arrived at by a consideration of all the facts and circumstances, it is error to utilize the summary procedure until there has been a proper development in the record of such facts and circumstances. The traditional mode of accomplishing this in a law action is through a trial by jury.[3]
Although both MacKenzie and the Owens testified either by depositions or affidavits, neither adduced testimony relative to the essential and material element of intent which was placed in issue by the pleadings. Had the facts and circumstances surrounding this material issue been fully developed, a jury might well have found that MacKenzie occupied a fiduciary relationship with the Owens and was obligated to represent their best interests throughout all negotiations down to and including the executing and passing of title. If so, after Wise's notice of default, MacKenzie would have been obligated to disclose to Owens the possibility of sale to Sandburg at a price in excess of that originally asked by the Owens. We cannot concede that a jury could not have reasonably concluded that the broker breached a duty owed to his principal; that Wise was in fact unable to consummate the proposed sale; and that the ultimate conveyance to Wise was a mere sham for the sole benefit and profit of the broker. Under such circumstances, if believed by a jury, MacKenzie would have forfeited his right to a commission on the sale to Wise.[4] The evidence is likewise susceptible of the interpretation that Wise sold his contract to MacKenzie who thereupon became the real purchaser of the Owens' property. If so, MacKenzie would not be entitled to a brokerage commission.[5]
Upon careful consideration of the pleadings, depositions and affidavits we form the definite impression that there were developed real issues of material facts and that the judge, in reality, tried the case. This procedure is not authorized under the rule governing the granting of summary judgments. It is only where all essential facts are beyond dispute and nothing remains but to determine whether the movant *680 is entitled to a judgment based on those facts that the operation of the rule obviates the need for a jury.[6]
For the foregoing reasons, and notwithstanding the high esteem with which we regard the able judge whose act is here under assault, it must be concluded that the entry of summary judgment was error. Accordingly, the judgment appealed from is reversed and the cause remanded for further proceedings.
CARROLL, DONALD K., J., and MURPHREE, JOHN A.H., Associate Judge, concur.
STURGIS, C.J., excused ex mero motu.
NOTES
[1] National Airlines v. Florida Equipment Co., Fla. 1954, 71 So.2d 741.
[2] See MacGregor v. Hosack, Fla. 1952, 58 So.2d 513.
[3] See Pancoast v. Pancoast, Fla.App. 1957, 97 So.2d 875.
[4] Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011.
[5] See Hallman v. Lipscomb, 114 S.C. 171, 103 S.E. 513; Clay v. Cummins, 207 Ala. 105, 91 So. 790.
[6] Whitehall Realty Corp. v. Manufacturers Trust Co., Fla. 1955, 81 So.2d 475; Wilson v. Bachrach, Fla. 1953, 65 So.2d 546.