156 So.2d 546 (1963)
Justina DEAN a/k/a Justine Knowles, and Reginald Dean, a/k/a Ben Dean, her husband, Appellants,
v.
GOLD COAST THEATRES, INC., Appellee.
No. 3476.
District Court of Appeal of Florida. Second District.
October 2, 1963.
*547 William J. George, Pompano Beach, for appellants.
Sullivan, Musselman & Cochran, Pompano Beach, for appellee.
BARNS, PAUL D., Associate Judge.
This is an appeal from a summary final decree granted on motion of the defendant Gold Coast Theatres, Inc. We find error and reverse.
This suit for rescission of a transfer of land was brought by Justina Dean and her husband against Alfonso A. and Angelina DiMartino, his wife, E.E. Jordan, Joel Miller, North Broward Realty, Inc., and Gold Coast Theatres, Inc.; in sustaining defendants' motions to dismiss, the action was dismissed as to Jordan, Miller and North Broward Realty, Inc.; the motion to dismiss of Alfonso A. and Angelina DiMartino was denied and they have answered denying the allegations of the complaint.
The complaint among other things alleges:
"17. That to induce the Plaintiffs to execute said Contract of Sale (Exhibit A) and to execute and deliver said Warranty Deed (Exhibit B), the Defendants, Alfonso A. DiMartino, E.E. Jordan and Joel Miller conspired together and falsely and fraudulently represented to the Plaintiffs
"(a) between December 2, 1955 and December 13, 1955, that the offer made by said Charles E. Myers, presented by said P.H. Biscoe to purchase the said five (5) acres of land for $7,500.00 had been withdrawn by the said Charles E. Myers;
"(b) between December 2, 1955 and December 13, 1955, that the said Charles E. Myers' offer was no longer open and was no longer in existence;
"(c) between December 2, 1955 and December 13, 1955, that the said property had a market value of not more than Six Hundred and no/100 Dollars ($600.00) per acre.

* * * * *
"21. That when the said representations were made by the Defendants, Joel Miller, E.E. Jordan and Alfonso A. DiMartino at the time of the execution of the said contract (Exhibit A), and at the time of the execution and delivery of said Warranty Deed (Exhibit B) and prior thereto, the Defendants, Joel Miller, E.E. Jordan and Alfonso A. DiMartino well knew said representations were false, inasmuch as
"(a) the offer made by said Charles E. Myers to purchase said five (5) acres of land for $7,500.00 had not been withdrawn; and
"(b) the said offer was still open and was still in existence and was intentionally and fraudulently concealed from the Plaintiffs by the Defendants, Joel Miller, E.E. Jordan and Alfonso A. DiMartino.
"(c) the said property had a market value of approximately Three Thousand and no/100 Dollars ($3,000.00) per acre, inasmuch as the Defendants, Joel Miller, E.E. Jordan and Alfonso A. DiMartino had knowledge of the willingness of said Charles E. Myers to pay Fifteen Thousand and no/100 Dollars ($15,000.00) for the said property.

* * * * *
"25. That the said Defendant, Gold Coast Theatres, Inc., and the said Charles E. Myers, in his capacity as president of said Gold Coast Theatres, Inc., purchased the said five (5) acres of land, as mentioned in Paragraph 23 above with notice of the fraudulent circumstances hereinbefore described."
After filing a motion to dismiss and not having answered, the defendant Gold Coast Theatres, Inc., made a motion for summary judgment supported by an affidavit of Charles E. Myers stating that his offer of December 2, 1955 of $7500 for the 5 acres was not accepted; that he "had no knowledge, either directly or constructively, as to any of the facts concerning dealings" between the plaintiffs and the other defendants; that on or about February 8, 1956 *548 he learned the property had been sold to DiMartino but had no knowledge of the circumstances of the sale or the price paid; that he made DiMartino an offer of $15,000 for the property which was accepted on or about April 30, 1956 and the transaction was closed by a conveyance to the Gold Coast Theatres, Inc.; "that at no time did he have any knowledge of any of the purported fraudulent circumstances alleged in the plaintiff's complaint until he was served with a copy of it on May 25, 1961"; that he acted in good faith with those parties who on the public records held title.
In opposition to the motion for summary judgment plaintiffs filed an affidavit of P.H. Biscoe which affidavit together with the complaint show the matter hereinafter stated.
Justina Dean was the owner of 5 acres. Joel Miller and E.E. Jordan doing business as Miller and Jordan were attorneys and represented Justina in some litigation. Miller and Jordan dissolved on or about February 1, 1956. Alfonso A. DiMartino was engaged in the real estate business in the name of North Broward Realty, Inc., and DiMartino was its president: Joel Miller and DiMartino were associated together in the operation of the aforesaid "North Broward" by virtue of a real estate brokerage license held by Miller. Charles E. Myers was president of Gold Coast Theatres, Inc., which now holds title to the 5 acres.
Myers offered Justina $7500 for her 5 acres which was not accepted; Justina then shortly thereafter sold her 5 acres for $3000 to DiMartino who then sold it to Myers for $15,000. Justina brings suit for rescission based on fraud.
On December 2, 1955 P.H. Biscoe, a real estate broker consulted Justina Dean and presented to her an offer of Charles E. Myers of $7500 for her 5 acres; she considered the offer favorably but referred Biscoe to her attorneys, Miller and Jordan, and advised him that she would be guided by their advice: Biscoe in company with Myers on the same day delivered the proposed contract and check to the attorneys pursuant to her instructions; Mr. Jordan received the contract and commented that it was a good deal; that he would have it signed and that it could be picked up on the next day. Biscoe called at the attorneys' offices on December 3rd, 5th, 7th and the 12th without being able to see the attorneys, however, the secretary on December 12, 1955 advised him that the owners had decided not to sell and returned the proposed contract and check to him which he in turn returned to Myers; Biscoe kept Myers informed of each call and the result. When Biscoe returned the proposed contract and check to Myers he expressed himself as being suspicious of the whole transaction and they both agreed that there was something strange about it.
On December 14, 1955 Biscoe called on Myers at his home and in discussing the matter Mr. Myers stated "They have got me over a barrel. What can I do?", at which time a salesman from the office of DiMartino appeared with a contract for Myers to sign for the purchase of the 5 acres from DiMartino as seller. Mr. Myers knew that Joel Miller was a registered broker in DiMartino's office.
DiMartino's contract for the purchase of the 5 acres was a binder receipt of Ten ($10.00) Dollars with E.E. Jordan signing as a subscribing witness which receipt called for a purchase price at $3000.00 with Alfonso DiMartino agreeing to pay an additional amount not exceeding $300 toward the payment of cost involved in and about pending litigation concerning the 5 acres. This binder receipt was dated July 1, 1955 but the complaint alleges that it was actually signed between December 2, 1955 and December 13, 1955.
On February 9, 1956 Justina Dean and her husband executed a warranty deed conveying the 5 acres to Angelina DiMartino (a married woman) which deed was signed by E.E. Jordan as a subscribing witness and notarized by him. On or about February 8, 1956 DiMartino and his wife *549 entered into a contract with Myers for the sale and purchase of the 5 acres at a price of $15,000, which sale was concluded on April 30, 1956, by a conveyance to Gold Coast Theatres, Inc., of which Myers was its president.

Conclusion
The defendant-appellee has not answered, hence there are no paper issues of fact. From the complaint and affidavit submitted in opposition to the defendant's motion for a summary judgment, it appears that appellants' access to proof of the complaint is extremely limited while the defendants' access to proof of the absence of fraud and want of imputed knowledge of any fraud is far more unrestricted since the co-defendants have a common interest and collectively know the real facts.
The Motion for summary decree was supported solely by the affidavit of Myers which states that "at no time did he have any knowledge of the purported fraudulent circumstances alleged in plaintiff's complaint", which is not an evidentiary fact but an ultimate fact to be proved or disproved by evidentiary facts. Statements of ultimate facts in an affidavit in support of a motion for summary decree are of no weight. 6 Moore's Federal Practice, 2nd Ed., § 56.22, p. 2328, note 24. Myers has not been subjected to the fact revealing process of cross-examination.
Rule 1.36(e), Rules of Civil Procedure, 30 F.S.A., requires that such affidavits shall "set forth such facts as would be admissible in evidence". Allegation of the ultimate facts usually suffice for pleading purposes but more is required of an affidavit to support a motion for a summary decree. A defendant is not allowed to push a plaintiff out of court by such means. As stated in Peckham v. Ronrico Corp., 1 Cir., 171 F.2d 653, 657: "A litigant has a right to a trial where there is the slightest doubt as to the facts", which case involved fraud.
In reviewing the entry of a summary decree, Alepgo Corporation v. Pozin, Fla.App., 114 So.2d 645, held:
"Summary judgment is not a substitute for a trial; and fraud is a subtle thing requiring full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute fraud. Since the whole context is necessary for the determination, it is seldom that one can determine the presence or absence of fraud without trial."
It is our conclusion that the defendant failed to affirmatively and clearly show in support of its motion that there was no genuine issue of a material fact and that a trial would be useless. In coming to this conclusion we have been guided by the following principles stated in 6 Moore's Federal Practice, 2nd Ed., § 56.23, p. 2341:
"In examining the moving papers, and the opposing papers, if any, the trial court should give due weight to a number of factors: to the need for cross-examination by the opposing party in relation to any evidentiary materials, such as supporting affidavits, where the opposing party has had no opportunity to cross-examine; to the general desirability of demeanor testimony; to the factor of access to proof by the opposing party; and, in a proper situation, to the desirability that the case receive the full exploration of a trial.
"At the risk of wearisome repeition, we reiterate:
"All reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.
"It is not the function of the trial court at the summary judgment hearing to resolve any genuine factual issue, including credibility; and for purposes of ruling on the motion all factual inferences are to be taken against the moving party and in favor of the opposing *550 party, and the appellate court will do likewise in reviewing the trial court's grant of summary judgment. Discretion plays no real role in the grant of summary judgment: the grant of summary judgment must be proper under the above principles or the grant is subject to a reversal. The trial court may, however, exercise a sound discretion in denying summary judgment, appropriate to the case at hand, although the movant may have technically shouldered his burden.
Reversed.
SHANNON, Acting C.J., and WHITE, J., concur.