426 So.2d 52 (1983)
The CITIZENS BANK OF PERRY, a banking corporation Organized and Existing under the Laws of the State of Florida, Appellant,
v.
HARLIE LYNCH CONSTRUCTION COMPANY, INC., Appellee.
No. AN-82.
District Court of Appeal of Florida, First District.
January 4, 1983.
Rehearing Denied February 22, 1983.
*53 Michael F. Coppins of Douglass, Davey & Cooper, Tallahassee, for appellant.
John E. Norris of Brannon, Brown, Norris, Vocelle, Haley, Brown & Robinson, Lake City, for appellee.
JOANOS, Judge.
This is an appeal pursuant to Fla.R. App.P. 9.130(a)(3)(C)(iv), of an order granting summary judgment as to liability on Lynch's complaint for breach of contract. We affirm.
The undisputed facts are that The Citizens Bank of Perry ("Bank"), on December 31, 1980, sent invitations to bid on the construction of a proposed branch facility to several contractors including Harlie Lynch Construction Company, Inc. ("Lynch"). Lynch submitted a bid which was accepted by the board of directors in January, 1981. Bank President Moore orally notified Lynch that its bid had been accepted. The architect for the project was directed by letter to prepare a written contract to be executed by the parties. The written Owner-Contractor Agreement was not executed because at a meeting held in February, 1981, a new board of directors decided the proposed building was too large and too expensive.
Bidders were provided detailed Bidding and Contract Documents, which included "Instructions to Bidders" and "General Conditions of the Contract for Construction." The "Instructions to Bidders" included a provision for bid security "pledging that the Bidder will enter into a Contract with the Owner on the terms stated in his bid and will, if required, furnish bonds as described hereunder... . Should the Bidder refuse to enter into such Contract or fail to furnish such bonds, if required, the amount of the bid security shall be forfeited to the Owner as liquidated damages, not as penalty." Lynch's bid was accompanied by a 5% bid bond.
Lynch sued the Bank, alleging that its bid had been accepted and the Bank had directed that a formal contract be drawn up in accordance with the invitation to bid and the plans and specifications; Lynch had been notified of acceptance of its bid; more than thirty-one days after notification and acceptance, the Bank notified Lynch it would not allow it to perform the contract; the Bank never returned Lynch's bid bond which had been submitted along with the bid and accepted by the Bank; the Bank refused to allow Lynch to perform the contract even though it was ready, willing and able to perform as agreed.
Both Lynch and the Bank moved for summary judgment. The allegations in Lynch's motion for summary judgment were substantially the same as set forth above. The Bank, in its motion, alleged the undisputed facts showed that a formal contract was contemplated, but never executed, that all terms and conditions of the anticipated contract were not settled, and that negotiations never reached the stage where no further additions or changes were anticipated by either party.
The Court granted summary judgment in favor of Lynch, finding that the Bank had invited Lynch to bid according to the plans and specifications; the invitation to bid set forth in detail the Bank's requirements for a contract with the successful bidder; in accordance with all the terms and conditions, Lynch offered a bid accompanied by a bid bond conditioned on the payment of 5% as liquidated damages should it fail to strictly perform, as set forth in detail in the invitation to bid; the board of directors of the Bank accepted Lynch's bid as submitted and notified Lynch of this acceptance; the terms defined by Bank in the invitation, offered by Lynch, and accepted by the Bank were sufficiently definite and certain so that each party knew what was required of it by the offer and acceptance; after notifying Lynch of acceptance of the bid, and after a change in the constituency of the board of directors, the Bank failed to allow Lynch to perform even though Lynch was ready, willing, and able to perform as agreed; a contract existed and the Bank's conduct constituted a breach.
"A summary judgment is rendered upon a showing that there is no genuine issue as to any material fact and that the moving *54 party is entitled to judgment as a matter of law." Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla. 1982). Summary judgment procedure may not be used as a substitute for trial, and "[t]he burden of the movant in a motion for summary judgment is not simply to show that the facts support his own theory of the case but rather to demonstrate that the facts show that the party moved against cannot prevail." Burkett v. Parker, 410 So.2d 947 (Fla. 1st DCA 1982).
Appellant argues that the granting of summary judgment was error because genuine issues of material fact existed as to the parties' intent that their negotiations be reduced to a formal writing, and as to essential contract terms which remained open for consideration. However, a review of the record reflects that as to the essential terms of the contract, the trial court correctly determined that the terms specified in the invitation, offer, and acceptance were sufficiently definite and certain so that each party knew what was required of it by the offer and acceptance, and no essential terms remained open for negotiation.
We also reject the argument that a genuine issue existed as to the parties' intent to be bound before executing a written contract. We have not overlooked the guidelines set forth in Owens v. MacKenzie, 103 So.2d 677 (Fla. 1st DCA 1958), which appellant cites as authority, regarding the use of summary judgments when the parties' intent is alleged to be involved,[1] or the statements in Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 So. 13 (1910)[2] and Mann v. Thompson, 100 So.2d 634 (Fla. 1st DCA 1958), for which the Ocala opinion provides authority, that "[w]hen the parties intend that their negotiations be reduced to a formal writing, there is no binding contract until the writing is executed." However, the detailed bidding and contract documents do not appear to contain language which expresses an intent not to be bound, regardless of an oral agreement, until a formal written instrument had been signed. On the contrary, these documents clearly provided that should Lynch fail to execute the formal written agreement after acceptance of his bid, he would forfeit his 5% bid bond as liquidated damages. In other words, as there appear to be no conflicting legal inferences that could be drawn regarding the expressed intent of the parties so as to alter the legal effect of the undisputed facts of offer, acceptance, and communication of that acceptance to Lynch, the summary final judgment as to liability is AFFIRMED.
SHAW and WIGGINTON, JJ., concur.
NOTES
[1] "Where the essential inquiry is concerned with one's intent, although the evidentiary facts may not be in dispute, and such intent can better be arrived at by a consideration of all the facts and circumstances, it is error to utilize the summary procedure until there has been a proper development in the record of such facts and circumstances. The traditional mode of accomplishing this in a law action is through a trial by jury." 103 So.2d at 679.
[2] Of particular interest is the following quotation from Ocala Cooperage which appellant included in its brief, although with emphasis on the latter part of the sentence:

While it is true that where parties orally agree upon the terms of a contract, and there is a final assent thereto, so that no variation can be introduced into the writing except by mutual consent, the mere suggestion or intention to put the agreement in writing at a subsequent time is not, of itself, sufficient to show that the parties did not intend the parol contract to be regarded as complete and binding without being put in writing; but where it appears that the parties, or either of them, intended that the contract should be reduced to writing, so that its terms would be fully understood and definitely stated in the writing, the contract will not be regarded as complete or binding until it is reduced to writing and acquiesced in by both parties. (emphasis supplied)