545 So.2d 369 (1989)
DEPARTMENT OF REVENUE, Appellant,
v.
M.E. RUDD and Jean C. Rudd, Appellees.
No. 87-1725.
District Court of Appeal of Florida, First District.
May 26, 1989.
*370 Robert A. Butterworth, Atty. Gen., Lealand M. McCharen, Asst. Atty. Gen., for appellant.
Marion D. Lamb, Jr., Marion D. Lamb, III, and T. Whitney Strickland, Jr., Tallahassee, for appellees.
WENTWORTH, Judge.
This cause is before us on appeal of a summary judgment entered in a mortgage foreclosure case. We reverse based on issues presented by appellant as to (1) the untimeliness and insufficiency of appellee's challenge of the tax warrant, and (2) the existence of fact issues affecting the validity and priority of the mortgage foreclosed.
The judgment foreclosed a mortgage given March 11, 1987, by Joseph C. Rudd to his parents M.E. and Jean C. Rudd, appellees, in amount of $45,442.59, including fees and costs, and recorded March 12, 1987. The tax warrant in question was filed on March 12, 1987, by the appellant Florida Department of Revenue against Joseph Rudd to recover $290,000 (together with penalties) obtained by Joseph Rudd when he was an employee of the Department, based on applications of his co-conspirators claiming refunds of sales taxes which had not in fact been paid. The mortgage was executed in the course of divorce proceedings between Joseph and Valerie Rudd, and information given by Valerie to the Department and to law enforcement agencies was instrumental in producing the jeopardy tax warrant.
The reasons cited by the trial court for finding the warrant invalid are (1) the department may not issue warrants under section 212.15(4), Florida Statutes, except "for the amount of tax collected or otherwise due and not remitted"; (2) U.S. v. Assoc. Dev., 400 So.2d 17 (Fla. 1st DCA 1980), establishes that "tax funds are State funds from the moment of collection"; therefore (3) "the funds predicating the issuance of the warrant... were not tax funds due but general revenue funds." Propositions (1) and (2) are substantially accurate as stated, but even assuming the appellee mortgagees could assert such a defense at foreclosure, the predicate statements do not support the quantum leap required for the entirely novel conclusion (3) for which we are referred to no precedent. Conversely, appellees present no persuasive response to appellant's alternative contentions that (1) the explicit terms of section 72.011(2), (3) and (5),[1] Florida *371 Statutes, preclude challenge of a warrant after 60 days from issuance; (2) even assuming the Rudds could challenge the warrant by motion for summary judgment in June 1987, the funds improperly refunded by the department to its employee Joseph Rudd and his co-conspirator sales tax dealer were claimed and refunded as sales taxes for recovery of which "the department is empowered ... when any tax becomes delinquent or is otherwise in jeopardy... to issue a warrant [to] ... become a lien on any ... property of the taxpayer in the same manner as a recorded judgment," section 212.15(4), Florida Statutes; and (3) the affidavits presented by the parties upon motion for summary judgment clearly show material factual issues with respect to the status of the mortgage as a fraudulent conveyance lacking the bona fides required to establish priority over the warrant.
Section 72.011, Florida Statutes, and companion predecessor statutes have long imposed a requirement that the taxpayer shall begin contest proceedings within a specified time after the assessment becomes final, and also a requirement that prior to challenge the taxpayer shall pay any portion admittedly owed.[2] Case law developed which held that the time limit requirement would not bar a tardy challenge claiming an assessment to be void due to lack of legal basis. Overstreet v. Ty-Tan, Inc., 48 So.2d 158 (Fla. 1950); Chaves Construction Co. & Subsidiaries v. Metropolitan Dade County, 256 So.2d 545 (Fla. 3d DCA 1972). Distinctions between void and voidable levies were put at rest when the legislature amended chapter 194, Florida Statutes, in 1983 and section 72.011 in 1984 and 1985 to make the time limit and prepayment requirements jurisdictional. See Gulfside Interval Vacations, Inc. v. Schultz, 479 So.2d 776 (Fla. 2d DCA 1985), rev. denied 488 So.2d 830 (Fla. 1986). Citing Gulfside, this court in Hirsh v. Crews, 494 So.2d 260 (Fla. 1st DCA 1986), held that the amendment made the requirements jurisdictional. The result is that, while there should be no bar to the Rudds' claim that their earlier filed mortgage had priority over the warrant if the mortgage was not a fraudulent conveyance (as the question of priority in no way impacts on whether the warrant is legally authorized by statute), the Rudds are barred from making their claim that the warrant was without statutory authority. Accordingly, the trial court had no jurisdiction to rule on this issue. See Hirsh, supra, at 262.[3]
With regard to priority of the warrant over the mortgage recorded on the same date, the promissory note secured by the mortgage in this case was given by Joseph to his parents as a demand note. There was no fixed schedule of payments, and the elder Rudds filed a foreclosure suit on April 7, less than one month after the note was executed. The complaint alleged that Joseph had defaulted on April 1, 1987, by "failing to pay the principal payment due ... and all subsequent payments." The complaint further alleged that "demand has repeatedly been made." The foreclosure suit named Joseph Rudd and DOR as defendants. Joseph Rudd answered and admitted everything necessary to enter a judgment against him.
Appellant DOR answered the Rudds' complaint with a counterclaim that the *372 mortgage was a fraudulent conveyance, relying on settled principles:
Ordinarily, a party that alleges fraud must prove it and in setting aside a fraudulent conveyance, the burden of proof rests on the complainant, the presumption being against the existence of fraud.... However, where the parties involved in the alleged fraudulent transaction are relatives or close associates of the transferor, such close relationship tends to establish a prima facie case which must be met by evidence on the part of the defendant, and transactions are regarded with suspicion.
Nally v. Olsson, 134 So.2d 265 (Fla. 2d DCA 1961), citing Tornwall v. Carter, 106 So.2d 96 (Fla. 2d DCA 1958). See also Trueman Fertilizer Co. v. Stein, 157 Fla. 769, 26 So.2d 893, 895 (1946) (Chapman, Chief Justice, concurring specially), for the proposition that where the parties to the conveyance are family members, they must provide "clearer and fuller proof" that the transaction was bona fide than if the parties were strangers.
The elder Rudds filed a motion for summary judgment on grounds that the mortgage was given for actual consideration received and attached copies of canceled checks or other receipts for each sum included in the total $39,387.58 promissory note figure. In opposition, the state filed a lengthy affidavit from Greg Marr, an FDLE inspector who investigated the case against Joseph. Although the affidavit sets out an extremely detailed account of Joseph's scheme, Marr had no knowledge about the mortgage and promissory note transactions and does not refer to them. The state also filed an affidavit by Valerie, stating that she informed the elder Rudds about the fraud in November 1986. She also stated that she told Joseph in January 1987 that she had reported him and that his property would be seized. The affidavit stated that many of the elder Rudds' loans to Joseph were actually made as gifts at the time and that, based on her knowledge of the Rudd family, she believed that the $24,136 the elder Rudds supplied Joseph to buy her interest in the marital home was really a gift.
To prove fraud, one may show "a series of distinct acts, each of which may be a badge of fraud and when taken together as a whole, constitute fraud." Allen v. Tatham, 56 So.2d 337 (Fla. 1952). "Fraudulent intent usually must be proved by circumstantial evidence and such circumstances may, by their number and joint consideration, be sufficient to constitute proof." Nally, supra, at 267; Tornwall, supra, at 99. "Generally, the issue of fraud is not a proper subject of a summary judgment since it is a subtle thing requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud." Amazon v. Davidson, 390 So.2d 383 (Fla. 5th DCA 1980). "Since the whole context is necessary for the determination, it is seldom that one can determine the presence or absence of fraud without trial." Alepgo Corp. v. Pozin, 114 So.2d 645 (Fla. 3d DCA 1959). See also Bryant v. Small, 236 So.2d 150 (Fla. 3d DCA 1970); and Automobile Sales, Inc. v. Federated Mutual Implement and Hardware Insurance Co., 256 So.2d 386 (Fla. 3d DCA 1972) ("unique" situation required for entry of summary judgment in a fraud case). "A litigant has a right to trial where there is the slightest doubt as to the facts" in a fraud case (emphasis added). Dean v. Gold Coast Theatres, Inc., 156 So.2d 546 (Fla. 2d DCA 1963). "Even where the facts are undisputed, issues as to the interpretation of such facts may be such as to preclude the award of a summary judgment." Franklin County v. Leisure Properties, Ltd., 430 So.2d 475 (Fla. 1st DCA 1983), citing Owens v. MacKenzie, 103 So.2d 677 (Fla. 1st DCA 1958).
The cited cases indicate that in addition to the affidavits filed by the parties, the trial court was required to consider the circumstances surrounding the execution of the note and mortgage. The circumstances alone can be sufficient to prove fraud regardless of whether any witnesses have direct knowledge of fraud as to which they can or will testify. The reason underlying this rule is that, if both parties to a transaction are acting collusively, it may be *373 impossible ever to get direct testimony contradicting their claimed reasonable explanations. Dean, supra, points out the problem:
[I]t appears that appellants' access to proof of the complaint is extremely limited while the defendants' access to proof of the absence of fraud and want of imputed knowledge of any fraud is far more unrestricted since the codefendants have a common interest and collectively know the real facts.
The Rudds were required to "affirmatively and clearly show" that a trial would be useless. Dean, supra, at 549. The trial court must evaluate their proof of this with the following factors in mind:
In examining the moving papers, and the opposing papers, if any, the trial court should give due weight to a number of factors: to the need for cross-examination by the opposing party in relation to any evidentiary materials, such as supporting affidavits, where the opposing party has had no opportunity to cross-examine; to the general desirability of demeanor testimony; to the factor of access to proof by the opposing party; and, in a proper situation, to the desirability that the case receive the full exploration of a trial.
The Rudds' evidence was (1) an affidavit by John Rudd, attorney for Joseph Rudd in the dissolution proceeding, that M.E. Rudd and Joseph negotiated the $24,136 payment on the condition that that and the previous loans would be consolidated into a promissory note secured by a second mortgage, (2) an affidavit by M.E. Rudd that Joseph had repeatedly refused to pay despite demands, and (3) copies of canceled checks for the transactions covered by the note. However, none of the checks is facially identifiable as a loan. There was also no explanation for why the promissory note was made payable in full on demand without limitation. The Rudds' affidavits do not deny that they knew the property was at risk of subjection to a tax warrant at the time the mortgage was executed. There is no explanation for why some of the smaller loans, which date from as early as February 1985, had not been satisfied earlier or had to be made at all. That is significant in this case because the record reflects that until the August 1986 separation of Joseph and Valerie, Joseph had money available for purchase of such items as a satellite TV dish antennae costing more than $2,000. Greg Marr's affidavit states that in early 1985, Joseph Rudd gave Valerie $30,000 in one hundred dollar bills to use for house building expenses. Marr's affidavit also states that Rudd got one-third of all the money stolen as his "fee" and was receiving Federal Express packages with thousands in hundred dollar bills each time a new fraud was accomplished. Thirty frauds were involved, each for a sum between $9,800 and $9,999. This was occurring at the time some of the loans were alleged to have been occurring. Joseph therefore was not shown to have any need to borrow from his parents at that time. His situation was very different from the one existing during the dissolution; he was quite solvent. One reasonable inference is that he did not need to borrow and that those items were actually gifts as alleged by the state. As the nonmoving party, the state was entitled to have all reasonable inferences credited.
Valerie's affidavit also has evidentiary value despite some significant flaws. She specifically states that one of the 1985 items included in the consolidation, a $4,114.85 lawn tractor which she and Joseph bought with the elder Rudds' help, was intended as a gift at the time. This directly controverts what the Rudds say happened. She also said that in the summer of 1986, the elder Rudds made a gift to Joseph of $4,000, the balance owed for the Blazer. Her testimony supports a conclusion that approximately nine months before the promissory note was executed, the elder Rudds released Joseph from the same loan they later claimed was still outstanding. The affidavit sufficiently shows that these averments were made from personal knowledge. "Affidavits which are based entirely upon speculation, surmise and conjecture, are inadmissible at trial and legally insufficient to create a disputed issue of fact ... [but] a factual basis for the affiant's *374 knowledge need not be set out where the affiant is shown to be in a position where he would necessarily possess the knowledge." Carter v. Cessna Finance Corp., 498 So.2d 1319, 1321 (Fla. 4th DCA 1986). The affiant here was married to Joseph at the time the tractor and Blazer transactions occurred, and the affidavit states that she was a member of the family during the relevant times, giving her "intimate familial knowledge of the habits and practices of the Plaintiff's family." Her statements sufficiently demonstrated the basis of her knowledge. She was a participant to the transactions. Since the reason for the personal knowledge requirement is to prevent the trial court from considering hearsay, Wright v. Yurko, 446 So.2d 1162, 1165-1166 (Fla. 5th DCA 1984), and the important concern is that the information in the affidavit be admissible, First Mortgage Investors v. Boulevard National Bank of Miami, 327 So.2d 830 (Fla. 3d DCA 1976), rather than based on supposition, Landers v. Milton, 370 So.2d 368 (Fla. 1979), or the affiant's "best knowledge and belief," United Bonding Insurance Co. v. Dura-Stress, Inc., 243 So.2d 244 (Fla. 2d DCA 1971), Valerie's affidavit was admissible and disputed the nature of two transactions underlying the note. The Rudds, therefore, failed to demonstrate the requisite degree of certainty that no material fact issues existed, and summary judgment was inappropriate.
The summary judgment of foreclosure is reversed, and the cause is remanded for further consistent proceedings.
ERVIN, J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Judge, dissenting.
I would affirm the judgment below disallowing appellant's impermissible use of a tax warrant.
Appellees are mortgagees who foreclosed a mortgage given by their son Joseph. The Department of Revenue (DOR) sought to issue a lien on the property to recoup losses suffered by the State due to Joseph's embezzlement of State funds while employed by DOR. Joseph's scheme involved approving fraudulent sales tax refund applications submitted by coconspirators. No sales tax had ever actually been paid.
On this point, the trial court ruled as follows:
That Chapter 212.20(1) F.S.A. provides that the Department of Revenue shall pay over to the Treasurer of the State all funds received and collected by it under the provisions of that Chapter, to be credited to the account of the General Revenue Fund of the State. Tax funds are State funds from the moment of collection. UNITED STATES V. ASSOCIATED DEVELOPERS OF FLORIDA, INC. 400 So.2d 17 (1st DCA, 1980) [sic]. Chapter 212.15 provides for the issuance of a warrant for the amount of tax collected or otherwise due and not remitted. The funds predicating the issuance of the warrant in the instant case were not tax funds due but general revenue, thus the warrant was improvidently issued, and the tax warrant is without legal effect.
The statutory basis for DOR's jeopardy warrant is Section 212.15(4), Florida Statutes. This section provides:
(4) All taxes collected under this chapter shall be remitted to the department. In addition to criminal sanctions, the department is empowered, and it shall be its duty, when any tax becomes delinquent or is otherwise in jeopardy under this chapter, to issue a warrant for the full amount of the tax due or estimated to be due, with the interest, penalties, and cost of collection, directed to all and singular the sheriffs of the state, and mail the warrant to the clerk of the circuit court of the county where any property of the taxpayer is located. Upon receipt of the warrant, the clerk of the circuit court shall record it, and thereupon the amount of the warrant shall become a lien on any real or personal property of the taxpayer in the same manner as a recorded judgment. The department may issue a tax execution to enforce the collection of taxes imposed by *375 this chapter and deliver it to any sheriff. The sheriff shall thereupon proceed in the same manner as prescribed by law for executions and shall be entitled to the same fees for his services in executing the warrant to be collected. The department may also have a writ of garnishment to subject any indebtedness due to the delinquent dealer by a third person in any goods, money, chattels, or effects of the delinquent dealer in the hands, possession, or control of the third person in the manner provided by law for the payment of the tax due. Upon payment of the execution, warrant, judgment, or garnishment, the department shall satisfy the lien of record within 30 days. (emphasis added)
The jeopardy warrant at issue in this case states that it is a "warrant for collection of delinquent sales and/or use tax." In three separate locations, the warrant specifies its purpose as being to collect delinquent taxes.
It is undisputed that Rudd and his conconspirators defrauded the State by fraudulently inducing it to pay them money claimed as state tax refunds. Furthermore, Rudd and the others did not fraudulently retain sales taxes they had collected. They embezzled general revenue funds from the State in the guise of sales tax refunds, refunds which were not actually due.
Sales taxes are collected by DOR from licensed dealers. §§ 212.06 and 212.12, Fla. Stat. One of Rudd's coconspirators was Ernest C. Waters, a licensed dealer for sales tax collection purposes under Section 212.06, Florida Statutes. DOR argues that because the state consistently defines "dealer" as a person and defines "person" to include individuals involved in copartnerships and joint ventures, that because Rudd was Waters' partner, he was a dealer too. This argument overlooks the requirement of the statute that a "dealer" be someone engaged in one or more of a select group of activities denominated under Section 212.06, Florida Statutes. Fraudulently applying for tax refunds is not one such enumerated activity. More importantly, dealer or not, the funds were not delinquent or endangered taxes, and Section 212.15(4), Florida Statutes, only authorizes issuing jeopardy warrants to collect delinquent or otherwise endangered taxes. Section 212.15(4), Florida Statutes, does not authorize a jeopardy warrant to collect embezzled general revenue funds. The statutory authority is limited to issuing a warrant "for the full amount of the tax due or estimated to be due ... [to] enforce the collection of taxes imposed by this chapter."
The tax warrant is a powerful weapon properly used for the collection of delinquent taxes. The agency is empowered to issue the warrant without prior probable cause showing to, or approval by, any court or judicial officer, but only for the purpose stated in the statute. There is no precedent for its use as was done in this case, and it should be disallowed.
NOTES
[1] Jurisdiction of circuit courts in specific tax matters; administrative hearings and appeals; time for commencing action; parties; deposits. 
. . . . .
(2) No action may be brought to contest an assessment of any tax, interest, or penalty assessed under a section or chapter specified in subsection (1) after 60 days from the date the assessment becomes final. .. .
(3) In any action filed in circuit court contesting the legality of any tax, interest, or penalty assessed under a section or chapter specified in subsection (1), the plaintiff must:
. . . . .
(b)1. Tender into the registry of the court with the complaint the amount of the contested assessment . ..; or
2. File with the complaint a cash bond or a surety bond for the amount of the contested assessment....
. . . . .
(5) The requirements of this section are jurisdictional.
[2] Ibid.
[3] Although the merits of appellees' attack on the warrant need not be treated, there appear to be patent incongruities in their argument. In spite of the department's clear authority to approve refunds from general revenue for sums claimed to have been paid as sales taxes, section 212.17, Florida Statutes, appellees contend that funds which are improperly refunded are not "taxes" and that the department therefore may not use jeopardy warrants to retrieve such funds. It is hardly surprising that the issue has not been litigated. A more reasonable application of section 212.15(4), Florida Statutes, with respect to funds improperly refunded as taxes would accord to such funds the status of a "tax ... in jeopardy" for warrant purposes.