428 So.2d 681 (1983)
CITY OF PARKLAND and Broward County, Appellants,
v.
Norman SEPTIMUS, et al., Appellees.
No. 81-1266.
District Court of Appeal of Florida, Fourth District.
January 26, 1983.
Rehearing Denied April 18, 1983.
Harry A. Stewart, Gen. Counsel to the Bd. of County Com'rs of Broward County, Fort Lauderdale, Edward F. Ryan and Joel F. Bonder of Ross, Hardies, O'Keefe, Babcock & Parsons, Sp. Counsel, Chicago, Ill., and Robert E. Huebner, Atty. for City of Parkland, of Huebner, Murray & Fulton, P.A., Fort Lauderdale, for appellants.
Emerson Allsworth and Charles L. Curtis of Allsworth, Doumar, Padula, Cazel & Curtis, Fort Lauderdale, Gerald L. Mager of Abrams, Anton, Robbins, Resnick, Schneider *682 & Mager, P.A., Hollywood, and Robert M. Rhodes of Rhodes & Vickers, Tallahassee, for appellees.
DOWNEY, Judge.
This is an appeal by the City of Parkland and Broward County to review a final declaratory judgment in favor of appellees wherein the trial court held that the city and county were equitably estopped to apply the density restrictions of the Broward County Land Use Plan to appellees' property.
In 1973 Leadership Housing, Inc., a Florida real estate development corporation, acquired approximately 3,957 acres of land subject to purchase money mortgages in northwest Broward County from four separate land trusts. Some four years later all of the land reverted to the mortgagees for nonpayment of the purchase money mortgages. The appellees herein (formerly purchase money mortgagees) are the trustees of three land trusts with the exception of appellee Beaty who acquired his 1,076 acres in 1978 from one of the purchase money mortgagees, Housing Investment Corporation.
In 1973, after acquiring title, Leadership petitioned the appellee City of Parkland to annex the property to the city and to rezone it from "agricultural" to "Planned Unit Development." In December, 1973, the City granted the annexation and rezoning pursuant to provisions of an annexation agreement and certain covenants running with the land executed by Leadership. Then following the dictates of Chapter 380, Florida Statutes (1973), Leadership applied for and eventually received from the South Florida Regional Planning Council approval of its development of regional impact (DRI). Eventually the City issued a development order subsequently amended (ADO) which was based upon a Master Plan to develop a project of 21,714 dwelling units with a density of 5.49 units per acre.
Thereafter, Leadership began implementation of the project which involved obtaining water consumption and drainage permits; preparing plans for several golf courses; filing preliminary plats for the entire property and for Phase I; and forming a Water Management District by legislative act. The implementation activity involved expenditures of over $1,000,000 by Leadership. However, in mid 1975 Leadership ceased payments on the purchase money mortgages and in December of that year it negotiated modification agreements with two of the mortgagees. These agreements provided for, among other things, a reduction in interest rates, deferred principal payments, and a requirement that Leadership construct a 0.6 of a mile segment of University Drive between Holmberg Road and proposed Deerfield Parkway. This road construction and a borrow pit are the only physical improvements constructed on the property by Leadership.
In June 1976 Leadership and its co-venturer decided not to proceed any further with the project and the property went into foreclosure and eventually reverted to appellees or their predecessor in title.
In November 1974 the electorate of Broward County adopted a new County Charter. Article VI thereof mandates that the newly created Broward County Planning Council prepare a county-wide land use plan to control uses and densities on all county land.[1] Thus, in August 1975 pursuant to the County Charter and the Local Government Comprehensive Planning Act (Sections 163.3161-163.3211, Florida Statutes (1975)) the Planning Council began to prepare a land use plan for the county. In November 1977 the Broward County Commission adopted the Broward County Land Use Plan. During the time the Planning Council was preparing the land use plan Leadership's agents were in communication with the planners and County Commission, always taking the position that Leadership had a vested right in the PUD zoning and 5.49 units per acre density. During this *683 period the County went so far as to obtain an Attorney General's opinion regarding the authority of local government to adopt a comprehensive plan pursuant to Chapter 380 which would have the effect of amending an existing development order. The opinion was adverse to a density reduction.[2] Nevertheless, the Planning Council recommended a land use plan permitting only 3.0 units per acre on the Leadership tract. When the Commission adopted the plan it reduced the density on that tract to one unit per acre. That density was further reduced on the property west of University Drive to one unit per 2 1/2 acres.
The trial judge found that market conditions and the county's impending density reductions for the property made the project economically unfeasible as a result of which the property was allowed to revert to the mortgagees. Based upon his extensive findings of fact the trial judge felt it was unfair to appellees for the County to rezone the property to a lesser density in view of the DRI, the ADO and the extent of Leadership's activities pursuant thereto. In addition, he found that Leadership and the appellees intended for the latter to go forward with the project after foreclosure, assuming, we would suppose, that economic conditions did not dictate otherwise. Thus, he concluded that the County and City were equitably estopped from downgrading the permitted density from 5.49 to the substantially low limits presently provided.
We, of course, are not in a position to reweigh the evidence but must accept the trial judge's findings of fact which are supported by substantial competent evidence. In that respect we find no fault with the extensive findings set forth in the well prepared final judgment under review. We are not so bound by his conclusions of law, however, and with some of these conclusions we are not in accord; thus, we reach a different result.
In our judgment the facts of this case do not require or allow an application of the doctrine of equitable estoppel to the governmental units involved. Keeping in mind that we are dealing with an exercise of the police power of the government in planning and zoning the future use of property, we think the use of equitable estoppel to interdict such governmental action should be cautiously invoked. As the court said in Jones v. First Virginia Mtg. & Real Estate Inv., 399 So.2d 1068, 1074 (Fla. 2d DCA 1981):
It is true that sometimes the harsh consequences of an exercise of police power can be avoided by application of the doctrine of equitable estoppel, but the conditions which will trigger such relief are tightly circumscribed, lest an "unwise restraint [be placed] upon the police power of the government."
In the present case Leadership purchased several different tracts of land zoned "agricultural" from appellees for from $5,500 to $7,300 per acre and took back purchase money mortgages. Leadership, intending to develop the property, obtained its annexation and rezoning by the City of Parkland. Leadership spent over $1,000,000 in preparing to launch the 21,000 unit project. Economic conditions and the local government threat to reduce the density on the project caused Leadership to lose interest therein and allow foreclosure of the mortgages thereon. We pause at this point to suggest that if this were a suit between Leadership as owner and the appellees under the foregoing circumstances the doctrine of equitable estoppel might well be applicable. Under these circumstances we would have an owner in good faith substantially changing its position, by spending about $1,000,000 in preparing for the project, based upon an act of the government. That would trigger an estoppel *684 against the governmental unit. Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976). However, here the appellee/plaintiffs were not owners when the land received the 5.49 units per acre density, nor were they in privity with the governmental unit which fixed the density at 5.49. Finally, appellees did not substantially change their position in reliance upon the governmental act in question. Jones v. First Virginia Mtg. & Real Estate Inc., supra. Appellees had sold to Leadership long before the annexation and rezoning, and they did not invest in the property as a result of the governmental act. Appellees contend that some of them did change position by allowing Leadership to defer principal payments on the mortgage, reducing the interest rate, and receiving options on certain property at a favorable price. While all of these things might constitute consideration for the modification vis-a-vis Leadership and appellees they are not the type of position change or detriment contemplated in equitably estopping an exercise of the police powers in zoning property.
We view this case as much more analogous to Jones v. Virginia Mtg. than such clear cases as Jones v. U.S. Steel Credit Corporation, 382 So.2d 48 (Fla. 2d DCA 1980) or Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976).
There are other features of this case which render the conclusions of the trial court questionable such as the various efforts of appellees (some of which were successful) to effect zoning changes on the property after they again became the owners thereof; the fact that the tract of land is now some 672 acres smaller than the tract involved in the ADO granted to Leadership could considerably hamper compliance with the roads and drainage requirements of the master plan on which the ADO was issued.
In any event, we are not compelled to actually decide some of the other questions raised regarding appellees' rights to proceed under the Leadership ADO because if appellants are not equitably estopped to make the zoning changes contained in the Broward County Land Use Plan the appellees cannot prevail. Having concluded that the doctrine is not available to appellees in this case, we reverse the judgment appealed from and remand the cause to the trial court with directions to enter judgment for appellants declaring the Broward County Land Use Plan applicable to appellees' property.
ANSTEAD and BERANEK, JJ., concur.
NOTES
[1] Prior to certification of a municipal land use plan, the county plan controls the uses and densities even in municipalities. The City of Parkland has never received certification of its proposed land use plan so the county plan is effective in Parkland.
[2] AGO-077-7 (January 25, 1977) advised that:

A unit of local government in Broward County that has issued a development order pursuant to s. 380.06, F.S., of the Florida Land and Water Management Act of 1972, ss. 380.012-380.10, F.S., is prohibited from adopting a comprehensive plan for future development and growth pursuant to either the Local Government Comprehensive Planning Act of 1975, ss. 163.3161-163.3211, F.S., or the Broward County Charter that in effect amends such development order.