430 So.2d 475 (1983)
FRANKLIN COUNTY, a Political Subdivision of the State of Florida, and Corey Henriksen, the Building Official of Franklin County, Appellants,
v.
LEISURE PROPERTIES, LTD., a Florida Limited Partnership, by Gene D. Brown and John R. Stocks, As Its General Partners and Musgrave Development, Inc., a Florida Corporation, Appellees.
Nos. AD-395, AE-227 and AF-112.
District Court of Appeal of Florida, First District.
March 9, 1983.
As Clarified on Denial of Rehearing April 29, 1983.
*476 Jerry W. Gerde of Davenport, Johnston, Harris & Gerde, P.A., Panama City; and Alfred O. Shuler of Shuler & Shuler, Apalachicola, for appellants.
Thomas G. Pelham and David S. Dee of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellees.
Jane Heerema of Roberts, Egan & Routa, P.A., Tallahassee, for the State Ass'n of County Com'rs, amicus curiae.
Stephen W. Metz, Tallahassee, and Robert M. Rhodes and James Hauser of Messer, Rhodes & Vickers, Tallahassee, for Florida Home Builders Ass'n, amicus curiae.
PER CURIAM.
Franklin County appeals summary judgments granted Leisure Properties, Ltd. (Leisure) and Musgrave Development, Inc. (Musgrave) on Counts II, III, IV, and VI of Leisure and Musgrave's consolidated complaint. Musgrave cross-appeals the summary judgment on Count II. We affirm in part and reverse in part.
*477 Leisure purchased approximately 3,000 acres on St. George Island in 1971. Included were the parcels of land which are the subject of this appeal, the "commercial lots" and the "commercial acreage."
In 1972 Franklin County adopted a resolution of intention to establish a land use plan[1] for the county in order to protect the seafood industry. In 1974 Leisure submitted a request for a development of regional impact (DRI),[2] proposing 3,000 housing units on 800 acres on the island, but not including the "commercial lots" and "commercial acreage." The county found the proposed density level too high. In June of 1975, after lengthy negotiations, the county approved the DRI with 2,200 multi-family units, subject to 30 conditions. Leisure chose not to proceed under this DRI order because of the numerous restrictions.
During the DRI negotiations the county was preparing its land use plan. Leisure requested that the plan allow multi-family construction on St. George Island. The plan provided that "multi-family housing should be encouraged to locate along the waterfront to take advantage of the impressive vistas" and stated that, "[i]ncreased concentration of population in the medium-density housing types will also provide the opportunity for more people to live in shoreline locations, while barring the necessity of utilizing every foot of shoreline for private development." Ordinance 75-7, enacted in late 1975, permitted multi-family housing in the area zoned C-3 Tourist Commercial, of which the subject parcels are a part.
Prior to the enactment of the ordinance, by letter of September 12, 1975, Leisure requested the county's permission to install water pipes on a county right-of-way to connect its property with a proposed 300,000-gallon water tank near the southern end of the bridge and causeway connecting the island with the mainland. Leisure introduced evidence that the system cost at least $800,000 and was designed to serve multi-family as well as single-family housing.
In March of 1977 Leisure filed a second DRI application, which was approved in September, 1977. It permitted less multi-family construction than had the first DRI. Leisure introduced evidence that it would not have agreed to this DRI had it not secured the favorable zoning for its property in the Tourist Commercial area.
On June 7, 1977, Leisure agreed to sell Roger Newton sixteen lots in Unit I of the Old Subdivision. These lots, like the commercial lots involved in this appeal, were zoned C-3 Tourist Commercial, for which multi-family construction was a permitted use. On June 8, Leisure agreed to sell Musgrave Development, Inc. a large tract of land known as Unit 4 for $2,300,000, with a down payment of $50,000. On December 8, 1977, Roger Newton applied for a building permit to build 48 units of multi-family housing on his sixteen lots. His plans at first did not meet building code requirements, and he was permitted to withdraw and resubmit them with revisions. On January 12, 1978, Newton finally was able to satisfy the planning commission's requirements. By a 5-2 count, the commission voted to authorize the building official to issue Newton a permit. On January 17, the county commission approved Newton's permit by a 3-2 vote. Two of the three commission members who voted to approve the permit stated that they were against condominiums but could see no legal way to deny the application. The commission unanimously voted to authorize its attorney to draft an ordinance barring the development of additional condominiums on St. George Island. During the Newton application process Graham Armistead, a local resident, applied for and was granted a permit to construct a motel, the Buccaneer Inn, near the Newton project and the commercial lots.
On February 6, 1978, Leisure submitted plans virtually identical to Newton's to develop its commercial lots; and at the same *478 time, it submitted plans for condominium development on the commercial acreage. On February 7, the county commission voted to begin immediately advertising a notice of intent to consider the amendment which was to become Ordinance 78-2, barring condominium development.
The building official testified that he did not review Leisure's plans because he had submitted them to the county and planning commissions. The plans for Leisure's two proposed developments were found to be "incomplete and insufficient" by the planning commission on February 9 and were hand-returned to Leisure's office without comment and without calling to Leisure's attention the fact that the plans had been left at the office. Leisure was notified by letter of February 21, 1978, that no more multi-family dwellings would be allowed in the commercial areas. On February 28, 1978, Ordinance 78-2 was adopted. On July 17, 1978, the ordinance was invalidated because it had been enacted without proper notice.[3]
During the period when Leisure was attempting to acquire the permits, Franklin County officials voiced their opposition to the development of Unit 4 and their desire that it should be publicly owned. Leisure tried to placate the county and worked out a deal with Musgrave, wherein Leisure paid Musgrave $25,000 and, on July 27, 1978, conveyed the commercial lots to Musgrave along with building plans for the parcel, applying $25,000 of the $50,000 Musgrave had paid Leisure on Unit 4 to the down payment on the commercial lots, and giving Musgrave a $25,000 "kicker for them to get out of the Unit 4 deal." As part of the transaction, Leisure also executed a document entitled "Transfer of Right in Building Permit Application," which purportedly granted Musgrave whatever rights Leisure had in securing a multi-family building permit on the commercial lots. Leisure ultimately sold Unit 4 to the Trust for Public Lands.
On July 31, 1978, Musgrave's agent communicated to the building official his desire to get a building permit for the commercial lots. The application was placed on the agenda for the August 9, 1978, planning commission meeting. On August 1, 1978, the county commission adopted Emergency Ordinance 78-7, providing for a one-year moratorium on the issuance of all building permits for multi-family construction. Musgrave's agent appeared before the planning commission on August 9 to have the plans for the parcel reviewed again. However, the commission refused to discuss the feasibility of the proposal, stating that the application was "insufficient or incomplete, lacking details of sewage plans." On August 17, the county commission readopted Ordinance 78-2 as Ordinance 78-8.
In December of 1978, Leisure and Musgrave sued the county. The consolidated complaint contained six counts, on four of which Leisure/Musgrave were granted summary judgments:
Count II: Musgrave sought declaratory and injunctive relief, alleging that the county's denial of Musgrave's application for a permit constituted a denial of equal protection, and asking the court to order the county to issue Musgrave a permit.
Count III: Leisure and Musgrave asked the court to invalidate the moratorium ordinances.
Count IV: Leisure and Musgrave sought a declaratory judgment invalidating Ord. 78-8, which eliminated multi-family construction as a permissible use of the C-3 Tourist Commercial zone.
Count VI: Leisure and Musgrave asked the court to declare that they had a vested right to use their property for multi-family development, claiming the county was equitably estopped to enforce Ord. 78-8 or to re-zone their property to prohibit multi-family development.
During the period from 1978 through early 1979 the county was seeking funding in order to comply with the Local Government Comprehensive Planning Act, section 163.3177 et seq., Florida Statutes (1975). The money did not come through until October *479 16, 1979. Meanwhile the county adopted two more moratoria, extending the ban on multi-family construction until the new comprehensive plan was finally developed and adopted, effective July 1, 1981.
During the operation of a moratorium in 1980 the county approved Graham Armistead's application for a permit to expand his motel by adding 48 units. Minutes of the May 13, 1980, planning and zoning commission meeting reflect that the plans had been on file many months and that the county boards were aware of plans for the expansion from the time construction was begun on the motel.
In this appeal we are called upon to review the granting of motions for summary judgments and we are mindful that summary judgments should be granted with great caution. Fontainebleau Hotel Corp. v. Southern Florida Hotel and Motel Association, 294 So.2d 390 (Fla. 3d DCA 1974). If there are issues of material fact and the slightest doubt remains, the remedy cannot be granted. Williams v. City of Lake City, 62 So.2d 732 (Fla. 1953). Even where the facts are undisputed, issues as to the interpretation of such facts may be such as to preclude the award of a summary judgment. Owens v. MacKenzie, 103 So.2d 677 (Fla. 1st DCA 1958). However, once the movant for summary judgment tenders competent evidence to support the motion, the opposing party must produce counter-evidence sufficient to reveal a genuine issue in order to defeat the motion; it is not enough just to assert the existence of an issue. Landers v. Milton, 370 So.2d 368 (Fla. 1979).
The central issue in this cause was raised in Count VI of the complaint in which the trial court was asked to declare that the county was equitably estopped to deny Leisure and Musgrave building permits for multi-family development on the subject property. The elements of an equitable estoppel are:
(1) a property owner's good faith reliance
(2) on some act or omission of the government and
(3) a substantial change in position or the incurring of excessive obligations and expenses so that it would be highly inequitable and unjust to destroy the right he acquired.
Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976); Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980), rev. dismissed, 403 So.2d 407 (Fla. 1981). In support of its estoppel claim, Leisure argues that it asked the county to zone its property for multi-family development and that the county complied with the request. Leisure introduced evidence that it relied on the favorable zoning of Ordinance 75-7 in building its water system and that it would not have constructed as large or expensive a system had the system not been intended to serve the subject parcels zoned multi-family. Indeed Leisure introduced testimony that it would not have built a water system at all had there been no multi-family construction permitted. There is deposition testimony in the record to support Leisure's reliance on the existing zoning by spending at least $800,000 to build the water system. The county argues that the percentage of the total cost of the system allocable to servicing the subject parcels is not known. While Leisure has come forward with competent evidence in support of its estoppel claim, the county has come forward with no counter-evidence that substantial expenditures were not allocable to the subject parcels in order to defeat Leisure's motion for summary judgment. Argument without evidence in the record is insufficient. Landers v. Milton. We therefore find that the trial court properly granted Leisure the summary judgment on Count VI.
Musgrave likewise claims an estoppel but is in a different posture from Leisure. Having purchased the commercial lots from Leisure, Musgrave claims that it "stands in Leisure's shoes," citing City of Gainesville v. Bishop, 174 So.2d 100 (Fla. 1st DCA 1965). This point would be well taken had Musgrave, like the plaintiff in Bishop, spent money in substantial reliance on a representation of government. The evidence *480 suggests that Musgrave may not even be obligated to purchase the parcel, and, at this point, has gotten back from Leisure $50,000, the same amount Musgrave paid as a down payment on Unit 4. Even if Musgrave had purchased the property, it would have had no right to rely on existing favorable zoning. City of Miami Beach v. 8701 Collins Avenue, Inc., 77 So.2d 428 (Fla. 1954). Additionally, good faith reliance would be difficult for Musgrave to show in view of the fact that at the time it purchased the parcel, Ordinance 78-2, barring high-density condominium developments, had been passed, and, although the ordinance was subsequently invalidated, Musgrave knew the county was opposed to the multi-family zoning and was attempting to change it. Thus Musgrave was on notice of the local government's position, regarding the use to which the property should be put, and cannot demonstrate good faith reliance.
We have neither been directed to nor found a case in which a successor in interest to the party claiming equitable estoppel has not independently in his own right incurred obligations or expenses in reliance on a representation of government in order to assert a successful equitable estoppel claim. A successor in interest must show his own entitlement to the benefit of an estoppel and may not make such a showing by merely purchasing property. See Jones v. First Virginia Mortgage and Real Estate Investment Trust, 399 So.2d 1068 (Fla. 2d DCA 1981). We therefore reverse the summary judgment on Count VI as to Musgrave.
In granting Musgrave a summary judgment on Count II, the trial court found that Musgrave had been denied equal protection because the county cooperated with Newton and processed his application, yet failed to follow the same procedure in Musgrave's case. An equal protection claim presupposes that the parties receiving disparate treatment are similarly situated. We find that Musgrave may not be compared with Newton, because Newton applied for his permit under Ordinance 75-7, which permitted multi-family construction, and no zoning changes were pending at the time. Newton's application was the occasion for the county to initiate change, and therefore the parties were not similarly situated.
When Leisure applied for a building permit on February 6, 1978, the county by then had voted to draft Ordinance 78-2, which was to bar any future condominium developments. This zoning change was therefore pending and was a matter of public record. Leisure was charged with notice of the impending change. See Smith v. City of Clearwater. Leisure/Musgrave argue also that Armistead was given a permit in the midst of a moratorium, and that Armistead's application was for efficiency apartment units with kitchenettes, which are the same as "apartment motels." Ordinance 75-7 includes the latter within the definition of a multi-family dwelling. The ordinance did allow motels as a permitted use in the C-3 Tourist Commercial zone, however, and this use was never proscribed. We have not found in the record whether Armistead's permit when issued allowed him to build the addition with the kitchenettes. If it did not, it would appear with certainty that Armistead was not given a permit in violation of the moratorium so that he received preferential treatment. If the permit allowed the kitchenettes, we still are not convinced that such would constitute a denial of equal protection, because the record is unclear as to whether a motel room with a kitchenette is in fact an "apartment motel." Musgrave having failed to introduce competent evidence to sustain a summary judgment in its favor as having been denied equal protection, we reverse the summary judgment on Count II on that issue.
The summary judgment on Count III invalidated the moratoria as unauthorized by statute, lacking in procedural compliance with the applicable statutes, and unreasonable. We disagree with the trial court that the moratoria were unauthorized by statute, because section 163.3197, Florida Statutes, in our view does not prevent a local government from enacting a moratorium *481 while it is adopting a new comprehensive plan pursuant to the Local Government Comprehensive Planning Act. That section provides in pertinent part:
Legal status of prior comprehensive plan.  Where, prior to the effective date of this act, a local government had adopted a comprehensive plan or element or portion thereof such adopted plan or element or portion thereof shall have such force and effect as it had at the date of adoption and until appropriate action is taken to adopt a new comprehensive plan as required by this act.
A local government may be confronted with the need to amend its current plan prior to the adoption of a new plan in order to prevent the establishment of undesirable construction which would be inconsistent with the goals of the new plan. Nothing in section 163.3197 prohibits such an amendment. Nevertheless, we affirm the summary judgment on Count III on the ground that the county did not comply with statutory procedural requirements in enacting the moratoria.
The summary judgment on Count IV invalidated Ordinance 78-8. The trial court invalidated the ordinance because its enactment was not in compliance with chapter 163, part II, Florida Statutes. We affirm this judgment also.
The remaining issues raised by the county and the point on cross appeal are affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
LARRY G. SMITH, J., and McCORD, GUYTE, P., Jr., and SHAW, LEANDER, J., Jr., Associate Judges, concur.
NOTES
[1] Chapter 163, part II, Florida Statutes (1971).
[2] Chapter 380, Florida Statutes (1973).
[3] Franklin County v. Armistead, No. 78-36 (Fla. 2d Cir.Ct., July 17, 1978).