643 So.2d 1112 (1994)
EQUITY RESOURCES, INC., and Richard L. Pelham, Petitioners,
v.
COUNTY OF LEON, Respondent.
No. 93-2711.
District Court of Appeal of Florida, First District.
September 8, 1994.
Rehearing Denied October 24, 1994.
*1113 Thomas G. Pelham of Holland & Knight, Tallahassee, for petitioners.
John C. Cooper of Cooper, Coppins & Monroe, P.A., Tallahassee, for respondent.
ZEHMER, Chief Judge.
Equity Resources, Inc., and Richard Pelham invoke this court's jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(2)(B) to review by certiorari the trial court's order denying their petition for writ of certiorari involving a final administrative order that sustained the Leon County Planning Department's denial of their application for a vested rights determination. The trial court's order approved the grounds of the *1114 hearing officer's determination with one exception, that Petitioners had not established a vested right to continue their development under the county's 2010 Comprehensive Plan. The standard of review under rule 9.030(b)(2)(B) applies to this proceeding and is limited to whether the trial court afforded procedural due process and applied the correct law. Education Dev. Ctr., Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106 (Fla. 1989); City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982); Leon County v. Mitchell, 611 So.2d 104 (Fla. 1st DCA 1992). Based on the record before us, we conclude that the trial court did not apply the correct law to the facts and therefore grant the writ.[1]

I.
The instant dispute arises under the Leon County 2010 Comprehensive Land Use Plan. Pursuant to the plan, the county adopted Ordinance No. 90-31 to ensure that existing vested rights of Leon County property owners are not lost by operation of the plan's proscriptions.[2] On November 13, 1990, Petitioners timely filed an application with the planning department requesting a vested rights determination for a 47-acre parcel of property located in Leon County on the shores of Lake Jackson. Petitioner Equity Resources, a Florida corporation, currently owns or has an ownership interest in all 47 acres. Petitioner Pelham is President of Equity Resources and, with his wife, jointly owns all of the stock in Equity Resources. The 47 acres of property are part of a 165-acre development project bordering the southern portion of Lake Jackson known as Bent Tree. This project has been under continuous planning and development from 1972, when it was originally purchased and rezoned from agricultural to RM-3 multi-family, until 1989, when a portion of the property was down-zoned from multi-family to Estate District.[3]
*1115 For purposes of this litigation, the 47 acres involved in the application can be treated conceptually as three parcels. Parcel one, referred to as Phase I, consists of approximately 10 acres. It has been developed and is presumptively vested under the plan. Parcel two, or Phase II, adjoins parcel one and consists of approximately 30 acres. Permits for this second phase of the development had been issued and construction of multi-family units had been commenced when the permits were revoked and Phase II was rezoned to Estate District in 1989. Finally, parcel three consists of approximately 7 acres and is zoned commercial. The focus of the instant dispute is primarily on the planned development of the latter two phases.

A.
On October 11, 1972, Pelham and others entered into an option to purchase the overall Bent Tree property. Under the option, the purchase of 40.88 acres of the tract was contingent upon the sellers' obtaining a rezoning of that portion to RM-3 multi-family. Substantially all of the 40.88 acres is included within the property subject to the current application. During the county's process of reviewing and approving the 1972 rezoning application, Pelham disclosed to the county the conceptual uses intended for the overall 165-acre tract. A model depicting the concept plan for development, including the instant property, was also displayed prior to the final rezoning approval. In addition, Pelham informed the county that the project would be developed over an unspecified number of years in several different phases. During the process of review, the impact of drainage from the Bent Tree development on Lake Jackson became an issue. Accordingly, a storm water management system was designed for all of the property and Pelham agreed to complete this system before any development commenced on the project if the county granted rezoning.
Rezoning was ultimately approved in October 1972. Since the 1972 purchase of the project, Pelham has continuously held an ownership interest either directly in the land or in all of the partnerships or corporate entities that have held title to the various portions of the land, including the property under consideration.
Following the purchase of the tract in 1972, the drainage system was designed and built at a cost of $45,000, with a capacity larger than would have been necessary for the instant property alone. After this system was constructed, development of the project commenced. From 1975 to 1989, 128 acres of the original 165 acres were developed in approximately 14 segments, with the county consistently approving permits for the development of these segments. While certain changes to the original concept evolved over time, none were considered substantial enough to warrant denial of any permits.
Equity Resources has held an ownership interest in all of the property involved in this case since 1987. Equity Resources acquired this interest from limited partnerships and other entities in which Pelham has held an interest and control.[4] In order to develop the property for commercial and multi-family uses as zoned, Equity Resources made arrangements for sewer and water service to serve the property through Talquin Electric Cooperative, Inc. In 1987, Talquin Electric and Equity Resources applied to Leon County for an expansion of the sewer service franchise area to include all of the property. The franchise granted to Talquin Electric involved capital expenditures of more than $200,000 for the construction of a sewer system to serve the entire project, including *1116 both Phases I and II. Equity Resources expended additional sums in contracting with Talquin Electric to expand water lines to serve all of the property. In addition, Equity Resources constructed a road at a cost of $25,000 to serve both Phases I and II of the property. Thereafter, it obtained building permits and completed construction of the multi-family residential development in Phase I, and obtained the environmental and building permits from the county for Phase II. Over all, since December 1986, Petitioners claim they have incurred expenditures in excess of $900,000 for planning, architectural, engineering, utilities, and legal services associated with development of Phases I and II, as well as for obtaining environmental and construction permits and financing for development. They further contend that these claimed expenditures do not include costs for development of the drainage system, costs for land purchases, or any costs associated with permitting, financing, site preparation, or construction in conjunction with Phase II. Petitioners insist that a substantial portion of the $900,000 is related to the property in Phase II.

B.
A hearing on the application for a vested rights determination was held before a staff committee of the Leon County Planning Department on August 5, 1991, following which the committee denied the application. Petitioners appealed, and the county referred the matter to a hearing officer. A hearing was held on October 10, 1991, to give the parties an opportunity to supplement the record, as authorized by the ordinance. Following submission of recommended final orders, the hearing officer entered a final order upholding the staff committee's denial of the application. Although the hearing officer disagreed with the county's position that Pelham and Equity Resources did not have standing to raise the vested-rights issue, the hearing officer concluded that Petitioners failed to prove that they had incurred significant expenses in reliance on any act of the county other than its original 1972 rezoning approval.
Equity Resources and Pelham thereafter filed their complaint for writ of certiorari in the circuit court. On April 8, 1993, the court entered its final order denying certiorari. Preliminarily, the trial court concluded that Pelham and Equity Resources lack standing to seek a vested rights determination. However, the court agreed with the hearing officer that, even if they have standing, Petitioners' equitable estoppel claim must fail "because there is no evidence they incurred expenses exclusively for the undeveloped portion of the property, because the expenditures were not made in reliance on any promise by the county and because the [Petitioners] waited far too long to complete the project."

II.
When the trial court reviewed the decision of the hearing officer under Florida Rule of Appellate Procedure 9.030(c)(3), there were three discrete components to its certiorari review. The trial court was limited to determining (1) whether procedural due process was accorded, (2) whether the essential requirements of law were observed, and (3) whether the administrative findings and judgment were supported by competent and substantial evidence. Education Dev. Ctr. v. Zoning Bd. of Appeals, 541 So.2d at 108. In the present case, there is no contention that due process was denied, and with one minor exception, there is no contention that the hearing officer's final order was not based on competent and substantial evidence.[5] Thus, *1117 the critical issue is whether the trial court observed the essential requirements of the law in ruling on the petition.
This case turns on the correct articulation and application of the common law doctrine of equitable estoppel, which is expressly incorporated in section IV.A.1.a. of Ordinance No. 90-31. This section uses language identical to the general definition of the doctrine as applied by Florida courts to protect property owners who have relied upon the actions of local zoning authorities. See, e.g., Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976); Franklin County v. Leisure Properties, Ltd., 430 So.2d 475 (Fla. 1st DCA), pet. rev. denied, 440 So.2d 352 (Fla. 1983); Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla. 2d DCA 1975); City of Lauderdale Lakes v. Corn, 427 So.2d 239 (Fla. 4th DCA 1983). The elements of equitable estoppel in these circumstances are:
(1) a property owner's good faith reliance
(2) on some act or omission of the government and
(3) a substantial change in position or the incurring of excessive obligations and expenses so that it would be highly inequitable and unjust to destroy the right he acquired.
Franklin County v. Leisure Properties, Ltd., 430 So.2d at 479.

A.
The trial court did not initially address the elements of estoppel because it concluded that the hearing officer had incorrectly dismissed the county's argument that neither Pelham nor Equity Resources possesses standing to claim a vested right. On this point, the trial court ruled that Pelham does not have standing because he does not presently own the land. Although Equity Resources does own the land, the trial court ruled that it has no standing to assert an equitable estoppel claim based only on the acts of reliance shown by Pelham and other intervening entities in which Pelham held an interest. We agree with Petitioners that the trial court incorrectly applied the law in this regard.
Standing is predicated on a party's legitimate or sufficient interest at stake in the controversy that will be affected by the outcome of the litigation. See generally, Jamlynn Inv. Corp. v. San Marco Residences, 544 So.2d 1080, 1082 (Fla. 2d DCA 1989); Geiger v. Sun First Nat'l Bank of Orlando, 427 So.2d 815, 817 (Fla. 5th DCA 1983). In the context of an equitable estoppel/vested rights case, it has been held that a person with a "legally recognizable interest" has standing to bring an equitable estoppel action to enjoin enforcement of zoning ordinances and that ownership of the property constitutes such a "legally recognizable interest." Jones v. First Virginia Mtg. and Real Estate Inv. Trust, 399 So.2d 1068 (Fla. 2d DCA 1981). In regard to Pelham's standing, the record confirms the hearing officer's finding that Pelham "individually and/or through entities in which Mr. Pelham has held a substantial ownership interest, has retained ownership interests in the property at issue from October 1972 to the date of the final hearing in this proceeding." As earlier noted, at the time the vested rights application was filed, Pelham and his wife jointly owned all of the stock in Equity Resources, Inc., the title holder of the property in question. Since Equity Resources acquired its interest from other Pelham controlled or owned entities, it merely served as a successor entity through which the Pelhams continued to hold an interest, albeit equitable in nature, in the ownership and development of the land in the project. In short, Pelham's transfer of the property to Equity Resources from other entities owned or controlled by him did not necessarily extinguish his interest in the property for purposes of his standing to seek a determination of vested rights to continue development of the property.
In any event, Equity Resources, as the current owner and developer of the property in question, clearly has a sufficient interest at stake, as well as a legally cognizable *1118 interest, which gives it standing to file a vested rights application pursuant to the ordinance. The trial court apparently confused the standing requirement with the substantive elements of equitable estoppel when it erroneously ruled that Equity Resources did not have standing because it failed to prove the essential element of sufficient acts of reliance. See, e.g., Jones v. First Virginia Mtg. & Real Estate Inv. Trust, 399 So.2d 1068 (holding that mortgage company, as owner of the property, had a legally recognizable interest and therefore had standing to bring the equitable estoppel action, but nonetheless failed to meet the substantive elements of estoppel to demonstrate its own independent reliance on the local government's zoning action). Although the trial court relied on a number of cases to support its legal ruling, none of these cases was decided on the issue of standing as propounded by the trial court. These cases, instead, were decided on the basis that estoppel did not apply because the new owner or mortgagee did not establish independent acts of reliance or was otherwise a stranger to the transaction from which the alleged estoppel arose.[6]
As far as Equity Resources' independent acts of reliance are concerned, it is true, as the trial court stated, that a transferee of property has no standing to assert a claim of equitable estoppel absent the transferee's establishment of some independent act of reliance on a promise made by the government. City of Tamarac v. Siegel, 399 So.2d 1124 (Fla. 4th DCA 1981); Jones v. First Virginia Mtg. & Real Estate Inv. Trust. As we noted in Franklin County v. Leisure Properties, Ltd., a "successor in interest" must show his own entitlement to the benefit of an estoppel and may not make such a showing by merely purchasing property. 430 So.2d at 480. However, as found by the hearing officer, the facts of this case show that both Pelham and Equity Resources have established their own entitlement to reliance on the 1972 rezoning "substantially beyond `merely purchasing property.'" As one who purchased the property under a contract contingent on rezoning after the county granted the rezoning conditioned on the construction of a drainage system, Pelham clearly established sufficient acts of reliance. See Hollywood Beach Hotel Co. v. City of Hollywood; Franklin County v. Leisure Properties, Ltd.; Board of County Comm'rs of Metro. Dade County v. Lutz, 314 So.2d 815 (Fla. 3d DCA 1975). Furthermore, it cannot be said, without exalting form over substance, that Equity Resources cannot utilize or benefit from Pelham's acts of reliance because Equity Resources and Pelham are strangers to one another. The trial court's conclusion in this regard gives little significance to the history of the project and the relationship between Equity Resources and Pelham. Equity Resources is not an independent corporation, unrelated to Pelham, that obtained its interest in the land as a stranger to the project. On the contrary, it is an entity that was created and controlled by Pelham to hold the land and consummate the development initiated by Pelham.
In addition, the court's ruling underestimates Equity Resources' own independent acts of reliance, not only on the 1972 zoning but on subsequent conduct by the county in granting development permits as well. These independent acts, which are discussed more fully in part II.C. of this opinion, include installing the sewer facilities and expanding water lines, building a road, and receiving permits from the county for, and completing construction of, Phase I of the project at a cost of more than $4,000,000, in addition to the planned benefit of these facilities to the property in Phase II and the receiving of environmental and development permits from the county for commencement of construction of Phase II. Indeed, as the hearing officer recognized, Petitioners' strongest argument in support of vesting is their reliance on the 1972 zoning coupled with the county's issuance in 1989 of permits authorizing Equity Resources to proceed with construction of Phase II. See, e.g., Hough v. Amato, 212 So.2d 662 (Fla. 1st DCA 1968) (government estopped from *1119 changing the zoning in existence at the time plaintiff bought the property and still in existence when he completed construction because of plaintiff's significant acts of reliance on the zoning). For these reasons, the trial court departed from the essential requirements of the law in ruling that Pelham and Equity Resources lacked standing.

B.
In addition to the standing issue, however, the trial court denied certiorari on the ground that the hearing officer correctly concluded that equitable estoppel does not apply to the circumstances of this case. Both the trial court and the hearing officer reasoned that Petitioners took too long in developing the property and simply undertook a risky business venture in expanding the sewer and water franchise to include the undeveloped portion of the property at the time they were developing Phase I. No significant weight was given to the fact that Equity Resources incurred expenses of $900,000 on this portion of the project since 1987. Instead, the trial court ruled that Petitioners' equitable estoppel claim must fail because "there is no evidence they incurred expenses exclusively for the undeveloped portion of the property, because the expenditures were not made in reliance on any promise by the county and because the [Petitioners] waited far too long to complete the project." (Emphasis added.) We agree with Petitioners that there is no basis in law for this ruling.
No law is cited for the proposition that the expenses incurred by Petitioners must be "exclusively for the undeveloped portion of the property," and we perceive no reasons that would justify such a restrictive application of the rule. As Petitioners point out, where property has been zoned and planned as one overall project, Florida courts have upheld vested rights in the zoning for the entire project without any showing that costs incurred by the landowner in planning and commencing construction can be exclusively attributed to each and every part of the overall project. See, e.g., Franklin County v. Leisure Properties, Ltd.; Board of County Comm'rs v. Lutz. For purposes of equitable estoppel, it is sufficient to demonstrate, as Petitioners did here, that a substantial and not a de minimis portion of the overall expenditures facilitated and benefitted future phases of the planned project.
Furthermore, we perceive no compelling reason to fashion a "reasonable time to develop" rule for large scale developments that would naturally contemplate and require a period of years to complete, especially when the local government is fully informed of the scope of the development and has consistently and systematically granted permits to continue the development. The present case is one of full disclosure to the county on the part of Petitioners.[7] There is no evidence that the county granted any of the permits with restrictions on the length of time the development could continue, and there is no evidence that the development at any time was abated or abandoned, either by Pelham or by Equity Resources. The fact that the county continuously issued permits for the unrestricted construction of the project over a period of 18 years with knowledge of expenditures for improvements to be made for the benefit of the undeveloped as well as developed land is legally sufficient to establish that it would be grossly unfair to allow the county to deny Pelham and Equity Resources a vested right at the eleventh hour of their development of Phase II. City of Gainesville v. Bishop, 174 So.2d 100 (Fla. 1st DCA), cert. discharged, 181 So.2d 163 (Fla. 1965); Hough v. Amato. The doctrine of equitable estoppel is based fundamentally on "`rules of fair play.'" Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 573 (Fla. 2d DCA 1975). As the court in that case explained:
"Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of *1120 fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon. A citizen is entitled to rely on the assurances or commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds... ."
Id. The trial court applied incorrect legal principles in ruling on the merits of the estoppel claim and thereby departed from the essential requirements of law.
For the foregoing reasons, we grant the petition for writ of certiorari and quash the trial court's final order. The cause is remanded to the trial court with directions to vacate the hearing officer's order and require the county to give further consideration to Petitioners' application in a manner consistent with this opinion.
MINER, J., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] Because of the limited scope of review, and unless otherwise noted, the facts set forth in this opinion have been gleaned from the hearing officer's findings of fact which the trial court found to be based on competent, substantial evidence. We only determine whether the trial court applied the correct law to those facts. Leon County v. Mitchell.
[2] The plan and ordinance were adopted in 1990 pursuant to section 163.3167, Florida Statutes. As noted by the hearing officer in his final order:

Pursuant to the Ordinance, any Leon County property owner who believes that his or her property rights to develop property are vested and, therefore, believes that the property may be developed without complying with the 2010 Comprehensive Plan must file an application provided by Leon County within 120 days after July 16, 1990. If an application is filed pursuant to the Ordinance and it is determined that development rights have vested, the consistency and concurrency requirements of the 2010 Comprehensive Plan do not apply to the property. Section IV.C.2 of the Ordinance.
The application is initially reviewed by the staff of the Tallahassee-Leon County Planning Department. If the staff cannot determine whether an applicant's development rights are unequivocally vested, a hearing is conducted before a staff committee consisting of the county attorney, the director of planning, and the director of environmental management. During this hearing, the applicant presents all of the evidence in support of the application. At the conclusion of the hearing, the staff committee votes to approve, conditionally approve, or deny the application.
Following exhaustion of these administrative steps, section III.C.5. of the ordinance provides for an "appeal" to a hearing officer. At this point, the hearing officer may receive additional evidence, as well as oral or written testimony (including cross-examination) in order to properly evaluate the staff committee's decision. Section III.C.5.g. of the ordinance, however, explicitly directs that this hearing is not a "hearing de novo."
Review of the hearing officer's final order is provided for in section III.C.5.h. of the ordinance. That provision authorizes judicial review by common-law certiorari to the circuit court.
[3] The 1989 down-zoning by the county occurred prior to the adoption of the 2010 Comprehensive Plan. It is currently the subject of litigation in federal court. See Villas of Lake Jackson, Ltd. v. Leon County, 796 F. Supp. 1477 (N.D.Fla. 1992). By the county's act of rezoning, Phase II of the development was reclassified as "estate zoning" which corresponds to the current zoning applicable to Phase II under the plan. Since this rezoning occurred prior to the adoption of the comprehensive plan, the issues in the proceedings below were limited to a determination of Petitioners' vested rights to the commercial zoning of the undeveloped 7.5 acre tract and to the Estate District zoning of the remaining undeveloped 30 acres. Despite the filing of their federal law suit, it was incumbent on Petitioners under section III.B.1. of the ordinance to request a determination of vested rights within 120 days of the July 16, 1990, adoption of the ordinance.
[4] On this point, the hearing officer made the following findings of fact which were not disturbed by the trial court:

At all times since the 1972 purchase of the overall 165 acres of the Bent Tree project, Richard Pelham has held an ownership interest either directly in the land or in all of the vehicles or entities that held title to the various portions of the property. With regard to the limited partnerships that have been used to develop the land, including the property at issue in this proceeding, either Richard Pelham or Equity Resources, Inc., has always been the general partner with one exception. From 1981-1986, while Lake Jackson, Ltd., had title to a part of the property at issue, Mr. Pelham was not the general partner of Lake Jackson, Ltd., but did retain a 40 percent interest in the partnership.
[5] In their petition before this court, Equity Resources and Pelham argue that the trial court failed to perform its duty on certiorari review with regard to the hearing officer's finding of fact that the county's approval of the sewer franchise area expansion "was limited by its terms to provide service" only to Phase I. Petitioners argue that this finding is not supported by substantial, competent evidence and is contrary to the undisputed evidence in the record. Although the trial court did not directly address this argument, it did implicitly recognize this discrepancy when it observed in its order that the sewer franchise granted to Talquin Electric in 1987 involved capital expenditures of $280,000 "for the construction of a sewer system to serve the entire project." The record supports the trial court's finding and Petitioners' contention that the hearing officer's finding was not based on competent and substantial evidence. This point is particularly relevant to our discussion of Petitioners' reliance on the county's approval of their expenditure of substantial sums of money to improve this portion of the planned development.
[6] See Franklin County v. Leisure Properties, Ltd., 430 So.2d 475; City of Parkland v. Septimus, 428 So.2d 681 (Fla. 4th DCA), pet. rev. denied, 440 So.2d 353 (Fla. 1983); Calusa Golf, Inc. v. Dade County, 426 So.2d 1165 (Fla. 3d DCA 1983).
[7] This observation is not inconsistent with the hearing officer's finding that in 1972 Pelham did not specifically indicate where the individual buildings would be located and how many would be built. For purposes of this decision, it was sufficient that Pelham readily revealed to the Board of County Commissioners his general plans for development of the entire project over a period of years.