695 So.2d 414 (1997)
DEPARTMENT OF TRANSPORTATION, etc., Appellant,
v.
SPRINGS LAND INVESTMENTS LTD., etc., et al., Appellees.
No. 96-2296.
District Court of Appeal of Florida, Fifth District.
May 16, 1997.
Rehearing Denied June 11, 1997.
*415 Pamela S. Leslie, General Counsel, and Gregory G. Costas, Assistant General Counsel, Tallahassee, for Appellant.
Jay W. Small of Wilson, Leavitt & Small, P.A., Orlando, for Appellee Springs Land Investments, Ltd.
W. SHARP, Judge.
The Department of Transportation (DOT) appeals from an order which awarded Springs Land $145,553 for surveying, engineering and planning services relating to property condemned in an eminent domain proceeding. DOT argues that the trial court abused its discretion[1] in awarding these fees because a substantial portion was unrelated to the eminent domain action. We agree and reverse.
Springs Land was the owner of two parcels of land in the City of Winter Springs ("City"). On September 29, 1988, DOT filed a map of reservation for improvements to S.R. 434 which affected the property. In 1989, Springs Land first hired McIntosh's company to determine the property's remaining use. He found no reasonable use for the property because the improvements to S.R. 434 would bisect it. DOT removed the map of reservation on June 20, 1990, after the Florida Supreme Court issued its opinion in Joint Ventures v. DOT, 563 So.2d 622 (Fla. 1990).[2]
Subsequently, the City took steps to effectuate its mandatory comprehensive plan. During this process, it reviewed zoning on various parcels of land with the intent of down-zoning certain property, including the *416 two parcels owned by Springs Land. The City earmarked these parcels for a change in land use and zoning to reduce the intensity from commercial to mixed use. The latter would have significantly reduced the property's market value.
Because of the proposed down-zoning, Springs Land again hired McIntosh's company in January of 1992, to provide surveying, engineering and planning services to vest its commercial zoning. At the hearing, McIntosh testified that the only way to prevent the parcels from being down-zoned and the consequent loss of commercial zoning was to use a vesting process to protect the current zoning.[3] McIntosh stated that vesting properties is a fairly common practice in non-eminent domain cases to protect property from potential down zoning through comprehensive plan changes.
Accordingly, McIntosh's company was hired to secure for Springs Land's parcels a preliminary site plan approval for a shopping center from the City. Acquisition of site plan approval was a necessary component to solidify and finalize the vesting and continuation of commercial zoning for the property. McIntosh subsequently obtained a vested rights status for the property, under local concurrency regulations.
After approval of the site plan, McIntosh did not go forward with acquiring the additional permits necessary to build the shopping center. Typically approvals of site plans are for 12 months. Here, however, the approvals were issued until 6 months after DOT completed the improvements to S.R. 434. Springs Land conceded that the approvals it obtained were aimed at maintaining the property's zoning status quo, and that it did not intend to implement the site plan because of the threat of condemnation. Nevertheless, the property could have been developed consistent with the site plan if the condemnation had failed to occur.
On April 4, 1994, six years after the map of reservation was filed and approximately four and one-half years after it was removed, DOT filed its notice of lis pendens. The Declaration of Taking was filed on April 29, 1994. McIntosh and Associates filed a claim of lien on both parcels under § 713.03 for the amount Springs Land owed it for the earlier services. McIntosh's company subsequently filed a motion to intervene for the purposes of apportioning the condemnation award, which was later voluntarily dismissed.[4]
Springs Land accepted offers of judgment from DOT for $45,000 and $1,800,000 on the two parcels. After the settlement and judgments were entered, it filed a motion to tax costs, including costs for McIntosh's company's services. At the hearing on this matter, McIntosh testified that the work performed added value to the property, and without the site plan the property would have been assessed differently. Robert Sutte, DOT's appraiser, testified he attributed value to the property for having an approved site plan. Springs Land's appraiser did likewise. Dale Laughner, DOT's urban planner, also testified that McIntosh's company's services added value to the property. He estimated that $55,732 was the portion of the fees properly chargeable to DOT.[5] However, he testified the remaining fees of $89,819, arose from services that were unrelated to the eminent domain action.
Springs Land argued that all of the fees were recoverable because the filing of the map of reservation and/or the announcement by DOT of the project, caused the City to target the property for down-zoning, which forced Springs Land to take steps to vest the commercial zoning. The trial court found that Springs Land incurred the costs of the site plan approval to vest commercial zoning and protect against the down-zoning because of the Department's having filed the map of *417 reservation in 1988. However, we conclude that the evidence in the record is insufficient to establish such a connection.[6]
DOT's points out that the fees for these disputed services related solely to vesting the commercial zoning for the property, and maintaining it until DOT either took the property or abandoned the project. In either event, Springs Land gained the benefit of the commercial zoning and the site plan approval. Further, DOT claims Springs Land has already been paid for those services in its settlement award because the value paid to it for the property was enhanced due to the property's vested commercial zoning and site plan approval. The value added to the property was much greater than the disputed fees. Sutte testified that he valued the land at $3.37 per square foot, rather than at $2.30, based upon the property's approved site plan. Although this may appear to be a small increase, it equates to a substantial sum as square footage increases. For example, for a parcel containing 212,573 square feet, this translates into a fair market value of $716,371 as opposed to $488,918, had down-zoning occurred.
Florida courts have long recognized that a condemning authority cannot acquire property at a depressed value because of the threat of condemnation. State Road Dept. v. Chicone, 158 So.2d 753 (Fla.1963). See also Dade County v. Still, 377 So.2d 689 (Fla. 1979); City of Miami v. Romer, 73 So.2d 285 (Fla.1954). Section 73.091, Fla. Stat. (1993)[7] provides that the condemning authority must pay all reasonable costs of the proceeding, including but not limited to, attorney's fees and appraisal fees. Costs reasonably and necessarily expended in connection with condemnation actions include investigation, research, preparation and presentation of the case at the trial level. Volusia County v. Pickens, 435 So.2d 247, 248 (Fla. 5th DCA), rev. denied, 443 So.2d 980 (Fla.1983). Owners are entitled to expert witness fees, which go to the establishment of just compensation. Dade County v. Brigham, 47 So.2d 602 (Fla. 1950); Sarasota County v. Burdette, 524 So.2d 1064 (Fla. 2d DCA 1988); Leeds v. City of Homestead, 407 So.2d 920 (Fla. 3d DCA 1981). These costs are recoverable for the purpose of putting the landowner on an equal footing with the condemning authority.
However, fees may not be awarded where appraisers or other experts are too numerous, or their charges improper. Grinaker v. Pinellas County, 328 So.2d 880, 881 (Fla. 2d DCA 1976). The fees must be reasonably and necessarily incurred in relation to a proper issue in the case. DOT v. Woods, 633 So.2d 94, 95 (Fla. 4th DCA 1994)(consultant's fee to assist attorney not recoverable where he gave no opinion on just valuation); Leeds at 921. An owner does not have carte blanche to incur unnecessary fees, and not all expenses an owner incurs may be collected. Brigham at 604.
In this case, the potential down-zoning of Springs Land's property was a common risk, faced by all landowners in the area, due to the requirement that the City implement *418 its comprehensive plan. Had there been no threat of condemnation, Springs Land would still have had to either incur costs to maintain the property's commercial zoning status, or suffer a financial loss because of down-zoning. The condemnation was unrelated to that problem, other than it may have prompted the City to reconsider its comprehensive plan.
The First District dealt with a similar issue in Div. of Bond Finance of Dept. of Gen. Services v. Rainey, 275 So.2d 551, 554 (Fla. 1st DCA 1973). It held that expenses incurred in the development of raw land enhanced its value and were properly taken into account by determining the fair market value of the land, at the time of condemnation. That happened in this case. We think this case is analogous to a hypothetical situation where property condemned includes a building constructed by the owner after purchasing the land. The owner should be compensated for the fair market value of the property increased by the value of the building, but the owner's expenses, such as architectural fees involved in planning and constructing the building are not recoverable. Such fees and costs are subsumed in the increased value of the property because of the building.
REVERSED and REMANDED.
COBB and GRIFFIN, JJ., concur.
NOTES
[1] The standard on review is abuse of discretion. Dade County v. Brigham, 47 So.2d 602 (Fla. 1950); Sarasota County v. Burdette, 524 So.2d 1064 (Fla. 2d DCA 1988); Leeds v. City of Homestead, 407 So.2d 920 (Fla. 3d DCA 1981).
[2] In Joint Ventures, the Florida Supreme Court invalidated certain statutory subsections as violative of due process when it declared the provisions for filing moratoriums creating maps of reservation unconstitutional.
[3] When the commercial zoning is vested, the owners have rights to the existing zoning. See Villas of Lake Jackson, Ltd. v. Leon County, 906 F.Supp. 1509, 1522 (N.D.Fla.1995); Equity Resources, Inc. v. County of Leon, 643 So.2d 1112, 1114, n. 3 (Fla. 1st DCA 1994), rev. denied, 651 So.2d 1194 (Fla.1995).
[4] The voluntary dismissal provided the company had "agreed not to seek a portion of the condemnation award to satisfy its statutory claim of lien... [but that this] should not be construed as ... a satisfaction of the claim of lien."
[5] These fees are not contested by the Department of Transportation.
[6] It is suggested that the facts in this case are analogous to those in Board of Commissioners v. Tallahassee Bank & Trust, 108 So.2d 74 (Fla. 1st DCA 1958). However, that case is distinguishable because it involved a collaborative effort between the city and the state to pass restrictive zoning ordinances which caused the decline of property values on land which the state planned to condemn in the future. The First District found that the evidence disclosed a purposeful agreement to restrict development of private land and prevent expensive improvement, because of the ultimate condemnation of this land. No such showing was made in this case.
[7] That section provides:

(1) The petitioner shall pay attorney's fees as provided in s. 73.092 as well as all reasonable costs incurred in the defense of the proceedings in the circuit court, including, but not limited to, reasonable appraisal fees and, when business damages are compensable, a reasonable accountant's fee, to be assessed by that court.
* * *
(3) In assessing costs, the court shall consider all factors relevant to the reasonableness of the costs, including, but not limited to, the fees paid to similar experts retained in the case by the condemning authority or other parties and the reasonable costs of similar services by similarly qualified persons.
(4) In assessing costs to be paid by the petitioner, the court shall be guided by the amount the defendant would ordinarily have been expected to pay for the services rendered if the petitioner were not responsible for the costs.
(5) The court shall make specific findings that justify each sum awarded as an expert witness fee.