# Third District Court of Appeal

## State of Florida

Opinion filed March 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1345
Lower Tribunal No. 21-11642
_____

**City of Miami Beach,**
Appellant,

vs.

**Clevelander Ocean, L.P.,**
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Rafael A. Paz, City Attorney, and Aleksandr Boksner, Chief Deputy City Attorney, and Mark A. Fishman, First Assistant City Attorney, Weiss Serota Helfman Cole & Bierman, P.L., and Jamie A. Cole (Fort Lauderdale), and Edward G. Guedes, and Eric P. Hockman, and Richard B. Rosengarten, for appellant.

Akerman LLP, and Gerald B. Cope, Jr., and Joni Armstrong Coffey, and Wesley Hevia, Shutts & Bowen LLP, and Alexander I. Tachmes, for appellee.

Before LINDSEY, MILLER, and GORDO, JJ.

MILLER, J.

This is an appeal from a grant of a preliminary prohibitive injunction in favor of appellee, the Clevelander Ocean, L.P., effectively restraining the enforcement of two ordinances enacted by appellant, the City of Miami Beach. The first ordinance (the "Alcohol Sales Rollback") rolled back the hours of alcohol sales from 5:00 a.m. to 2:00 a.m. for all businesses located in the MXE Mixed Use Entertainment District, while the second repealed an eastbound noise exemption (the "Eastbound Noise Exemption") enacted over a decade ago. This repeal left the Clevelander subject to the general noise ordinance, which prohibits unreasonable noise. The trial court found the Alcohol Sales Rollback was invalidly enacted because it was a regulation of land use requiring a supermajority rather than a simple majority commission vote. It further enjoined enforcement of the repeal, finding the Clevelander possessed a vested right to emit noise from outdoor entertainment up to a certain decibel, in conformity with a decades-old order of the City's Planning Board, two previously issued conditional use permits, and the Eastbound Noise Exemption. On appeal, the City contends the trial court abused its discretion in granting injunctive relief because the Clevelander failed to establish the requisite elements supporting injunctive

2

relief, and the trial court granted greater relief than that sought.[1]  Because the Alcohol Sales Rollback has expired by its own terms, that portion of the injunction restraining its enforcement no longer has any legal effect, rendering the first point on appeal moot.  See Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992).  We affirm on the remaining issue, finding there is competent, substantial evidence to support the temporary grant of injunctive relief prohibiting the City from enforcing certain provisions of the general noise ordinance against the Clevelander.

## BACKGROUND

The resolution of this appeal rests on whether there is competent, substantial evidence to support the trial court's vested rights determination. Thus, the facts require some elaboration.  In the early 1980s, the City designed the MXE Mixed Use Entertainment District (the "District") in order to encourage the substantial restoration of existing art deco structures and pave the way for new construction.  City of Miami Beach, Fla., Code § 142-540 (2021).  "The main permitted uses in the . . . [D]istrict are apartments[,] apartment hotels, hotels, hostels, and suite hotels[,] . . . commercial

---

[1] Because the complaint, motion for temporary injunction, and supplement to the motion for temporary injunction all assert vested rights consistent with that authorized under the board order and conditional use permits, and the City invited a decibel limit determination, we summarily reject the contention the trial court granted broader relief than that sought.

development[,] . . . and religious institutions," while restaurants and bars are authorized as either main permitted or accessory uses. City of Miami Beach, Fla., Code § 142-541 (2021); see City of Miami Beach, Fla., Code §§ 142-543, 142-546(a)(2) (2021).

District property owners seeking to renovate and preserve their property or expand the existing use must undertake the process of acquiring a conditional use permit (a "CUP"). See City of Miami Beach, Fla., Code § 118-191 (2021). The CUP application process requires the submission of plans, payment of fees, and participation in a duly noticed, quasi-judicial public hearing before the responsible City board. See City of Miami Beach, Fla., Code §§ 118-192, 118-193 (2021).

The Clevelander is a multi-story hotel located within the District. The hotel houses a restaurant and bar and has operated as an outdoor entertainment facility, hosting live music and disc jockeys, since at least 1986. The noise generated from this entertainment is often amplified and has consistently exceeded ambient levels.

Until 1995, the City's noise ordinance set forth limits on noise based upon decibel readings. In 1995, however, the City enacted a new noise standard, which repealed the decibel standard and replaced it with a prohibition on unreasonable noise. See City of Miami Beach, Fla., Code §

4

24-2 (1995). This ordinance made it unlawful for any person or business to emit "any sound which crosses a real property line at a volume which is [u]nreasonably [l]oud." Id.

While this ordinance remained in effect, in late 1999, the prior owner of the Clevelander applied for a certificate of appropriateness and design review approval from the City. The Historic Preservation Board approved the application, allowing for the placement of outdoor speakers on the property, with the caveat that the level of noise generated by the hotel would not exceed "more than . . . 72 db sustained . . . with a maximum peak of an additional six (6) db" and "the subject project [would] separately satisfy the requirements of the City Noise Ordinance, as presently enforced and as may be amended in the future." The board specified, however, that it retained jurisdiction and discretion to further regulate noise issues.

The City Planning Board subsequently incorporated the board order into two CUPs, issued in 2000 and 2010, respectively. The initial CUP approved certain expansion plans, including the "relocation of an existing stage for live entertainment," and reimposed the same decibel limit reflected in the board order, while the second further authorized a platform over a portion of the existing swimming pool.

In 2006, the City once again amended its noise ordinance. The new noise ordinance remains in effect today and currently reads, in pertinent part: "[i]t shall be unlawful for any person to make, continue or cause to be made or continued any unreasonably loud, excessive, unnecessary or unusual noise." City of Miami Beach, Fla., Code § 46-152 (2021). It further provides that

> [t]he operation of any . . . instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in such manner as to be plainly audible at a distance of 100 feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.

City of Miami Beach, Fla., Code § 46-152(b) (2021).

At the same time, the City enacted the Eastbound Noise Exemption, which exempted from the ambit of the general noise ordinance all

> [l]ive or amplified sound projecting east of the east property line from each property from 1st Street to 5th Street on the east side of Ocean Drive, from 9th Street to 11th Street on the west side of Ocean Drive, from 15th Street to 73rd Street on the east side of Collins Avenue, from 73rd to 75th Streets on the west side of Ocean Terrace, and from 76th to 87th Streets on the east side of Collins Avenue.

City of Miami Beach, Fla., Code § 46-157(11) (2021).

The Eastbound Noise Exemption remained in effect for the next fifteen years and was traditionally enforced until 5:00 a.m. During that time, the Planning Board issued the second, modified 2010 CUP to the Clevelander,

6

again reincorporating all conditions of the board order and further "allowing for the installation of the proposed pool platform measuring approximately 370 feet." The CUP, however, further provided that "receipt of . . . a notice of violation of section 46-152, Code of the City of Miami Beach, Florida (a/k/a 'noise ordinance'), as amended . . . shall be deemed a violation of this Conditional Use Permit," and "[n]othing in this [permit] authorizes a violation of the City Code or other applicable law, nor allows a relaxation of any requirement or standard set forth in the City Code."

In January 2021, despite a negative recommendation from the Land Use and Sustainability Committee, the City rolled back the Eastbound Noise Exemption from 5:00 a.m. to 2:00 a.m. Some four months later, in accordance with a twelve-point plan designed to curb the detrimental effects of a constant influx of visitors, the City enacted the two challenged ordinances. The first ordinance, the Alcohol Sales Rollback, was temporarily enacted and expired on December 8, 2021. The second ordinance, repealing the Eastbound Noise Exemption, had the effect of subjecting the Clevelander and other entertainment venues located on Ocean Drive between 9th Street and 11th Street to the unreasonable noise regulations codified in section 46-152 of the City Code and contained no expiration date. The Eastbound Noise Exemption remains in place in other parts of the City

7

and applies to the Clevelander's competitors on Ocean Drive from 1st Street to 5th Street, along with several oceanfront hotels on Collins Avenue from 16th Street to 87th Street.

After the repeal, the City sought to enforce the general noise ordinance against the Clevelander. Relying upon vested rights purportedly derived from the board order and CUPs, the hotel filed suit seeking injunctive and declaratory relief to prevent the enforcement of the repeal, along with a separate motion for a temporary injunction.[2] The City opposed the motion, contending that the very documents cited by the Clevelander could be equally construed as authorizing application of the repeal of the Eastbound Noise Exemption and enforcement of the general noise ordinance against the hotel.

The lower court convened a hearing. During the hearing, the Clevelander presented the board order and CUPs, along with a 2018 email from the City's Planning Director, acknowledging the Clevelander was authorized to project noise above ambient levels from its pool deck.[3] It further produced declarations attesting that enforcement of the repeal would wholly vitiate its ability to provide outdoor entertainment and that the 2018

---

[2] The Clevelander raised other claims that are not relevant to this appeal.
[3] As the December 2010 modified CUP reflects, noise at an ambient level is such that it "assur[es] no interference with normal conversation."

purchase price and acquisition of the hotel were based, in significant part, on "the portions of the permits and other government approvals for the Clevelander which allow outside live entertainment and music . . . as well as the permissibility to play easterly-directed music at above ambient levels." Relying upon the ability to present outdoor entertainment at the Clevelander, the hotel demonstrated a related entity purchased the adjacent Essex House Hotel under a plan to physically combine the two facilities and operate them as an expanded hotel. Finally, the Clevelander produced evidence it relied upon the board order and CUPs in investing in infrastructure for outdoor entertainment, creating a business and brand, and remodeling the hotel to allow noise to project eastward.

At the conclusion of the hearing, the trial court determined the Clevelander possessed a vested right to generate sound in conformity with the board order, CUPs, and Eastbound Noise Exemption. A subsequently rendered order enjoined the City "from enforcing [its] general [n]oise [o]rdinance against the Clevelander to the extent that the limitations therein conflict with Clevelander's vested right to provide live entertainment at volumes up to seventy-eight (78) decibels from its property line." The instant appeal ensued.

9

## STANDARD OF REVIEW

The issuance of a preliminary injunction is an extraordinary remedy that should be granted sparingly.  <u>Fla. High Sch. Activities Ass'n v. Kartenovich</u>, 749 So. 2d 1290, 1291 (Fla. 3d DCA 2000).  Nonetheless, trial courts enjoy "broad discretion in granting, denying, dissolving, or modifying injunctions, and unless a clear abuse of discretion is demonstrated, an appellate court must not disturb the trial court's decision." <u>Jackson v. Echols</u>, 937 So. 2d 1247, 1249 (Fla. 3d DCA 2006).

## ANALYSIS

"The primary purpose of entering a temporary injunction is to preserve the status quo pending the final outcome of a cause."  <u>Yardley v. Albu</u>, 826 So. 2d 467, 470 (Fla. 5th DCA 2002).  Such an injunction may only be entered if the party seeking relief establishes the following criteria: (1) a substantial likelihood of success on the merits; (2) the likelihood of irreparable harm; (3) the unavailability of an adequate remedy at law; and (4) that the issuance of the temporary injunction will not disserve the public interest.  <u>Id.</u>

Here, only the first element merits further discussion.  Some background regarding vested rights against government is necessary to our analysis.  In limited circumstances, private landowners may acquire vested

10

rights in the use of their land that protect them against the enforcement of subsequent legislation. In this context, Florida courts have viewed such asserted rights through the lens of equitable estoppel. See Hollywood Beach Hotel Co. v. City of Hollywood, 329 So. 2d 10 (Fla. 1976); Franklin County v. Leisure Props., Ltd., 430 So. 2d 475 (Fla. 1st DCA 1983); City of Lauderdale Lakes v. Corn, 427 So. 2d 239 (Fla. 4th DCA 1983). As our sister court has cogently explained,

> Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon. A citizen is entitled to rely on the assurances or commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds . . . .

Town of Largo v. Imperial Homes Corp., 309 So. 2d 571, 573 (Fla. 2d DCA 1975).

Like laches or waiver, equitable estoppel ordinarily turns on underlying factual determinations. 1 Gregory E. Upchurch, IP Litigation Guide: Patents & Trade Secrets § 11:8 (2021); see Bishop v. Progressive Exp. Ins. Co., 154 So. 3d 467, 468 (Fla. 1st DCA 2015) (holding "coverage by estoppel" requires a representation of material fact, reasonable reliance, and a

11

detrimental change in position as a result of reliance, which are generally questions for trier of fact).

Although we have allowed vested rights claims against government, equitable estoppel should be applied narrowly and with some reluctance. See State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981); Calusa Golf, Inc. v. Dade County, 426 So. 2d 1165, 1167 (Fla. 3d DCA 1983). Estoppel is designed to shield a property owner from enforcement of a subsequent regulation where the owner has received approval for and made substantial efforts to undertake a property use consistent with a prior regulation, but the public interest involved in such an analysis is not strictly between the municipality and the individual litigant. See Council Bros., Inc. v. City of Tallahassee, 634 So. 2d 264, 266 (Fla. 1st DCA 1994). All residents of the community have a personal interest in maintaining the character of an area as established by comprehensive zoning plans and preventing one property from being damaged or diminished in value by the use of an adjacent property.

Balancing these competing interests, a property owner asserting vested rights against a government agency must establish a good faith reliance upon some act or omission by the government and a substantial change in position or the incurring of such extensive obligations and

12

expenses that would render it highly inequitable or unjust to destroy the acquired right.  See Franklin County, 430 So. 2d at 479.

Applying these principles here, it is not our role to adjudicate the ultimate rights of the parties.  Rather, given the grant of relief below, we must glean whether there is sufficient evidence to support the Clevelander's theory of estoppel.  To this end, the Clevelander contended below it had never been subject to the City's general noise ordinance.  Instead, the sound parameters set forth in the initial board order and reincorporated into both CUPs always controlled.  To support this proposition, the Clevelander presented evidence establishing that although the Eastbound Noise Exemption was not in place when the hotel began operating, the noise generated by live entertainment was consistently in excess of that authorized under the general noise ordinance, and that the operative documents and the City's historical approach, including its Planning Director's recent pronouncement of authority, created an economic inducement for the initial $66 million acquisition of the hotel and the later $1 million renovations and improvements to the sound system and night club.  To enforce the repeal, the hotel argued, would divest the hotel of its ability to present outdoor entertainment and severely disrupt, if not destroy, its business operations and brand.  Moreover, since the exclusive authority to modify, revoke, or

13

impose additional conditions on CUPs lies not with the City Commission, but with the Planning Board, the Planning Board was required to take action. See City of Miami Beach, Fla., Code § 118-194(c) (2021).

Conversely, the City argued that the provisions of the board order and CUPs, requiring compliance with the noise ordinance "as presently enforced and as may be amended in the future," suggest the Clevelander has always been subject to the general noise ordinance. The Clevelander countered by arguing that harmonizing that language with the competing decibel provision compels the conclusion the CUPs intended to merely restrain the hotel from violating other provisions of the general noise ordinance, including engaging in the prohibited use of loudspeakers, power tools, and landscaping equipment.

We need not resolve these competing interpretations today because, under controlling precedent, the facts adduced below were sufficient to sustain the Clevelander's theory of estoppel. The hotel demonstrated that it acted in reliance upon the decibel limit in the board order and its CUPs, along with the actions of the City, in incurring extensive obligations and expenses, and those obligations and expenses would render it arguably inequitable or unjust to enforce the repeal. See Franklin County, 430 So. 2d at 479.

14

While the City further asserts on appeal that the evidence could have equally supported a denial of injunctive relief, that conclusion is not relevant to the scope of our review. We are not charged with considering the evidence that lends itself to a contrary finding. Instead, we must determine only whether there is competent, substantial evidence to support the finding that was made. See Swanigan v. Dobbs House, 442 So. 2d 1026, 1027 (Fla. 1st DCA 1983). In this regard, "it is the function of the trial court, not the appellate court, . . . to evaluate and weigh the . . . evidence" and render such findings. Smith v. Sears, Roebuck & Co., 681 So. 2d 871, 871 (Fla. 1st DCA 1996).

Accordingly, we conclude competent, substantial evidence supports the decision by the trial court to preserve the status quo pending the final resolution of the issues presented. Thus, we dismiss that part of the appeal relating to the Alcohol Sales Rollback and affirm that portion bearing on the enforcement of the repeal of the Eastbound Noise Exemption.

Dismissed in part; affirmed in part.